GEORGE K. McVEY v. GRAND LODGE ANCIENT ORDER OF
UNITED WORKMEN, &c.

1. When untrue answers to interrogatories propounded in writing to
   the applicant at time of his procuring a written contract from a society
   calling for the payment of a certain sum, and there is no allusion in
   such contract to such answers—*Held*, such answers are not warranted
   to be true, but are mere representations.
2. If representations of this sort are willfully false, and constituted in
   part the basis of the contract, the contract will be void on the ground
   of fraud.

Motion for a new trial, the case having been tried in the
Burlington Circuit by Justice Garrison, without a jury.

Argued at June Term, 1890, before BEASLEY, CHIEF
JUSTICE, and Justice MAGIE.

For the motion, *J. Frank Fort.*

*Contra, Walter A. Barrows.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The ground work of this suit
is what is called in the pleadings a benefit certificate, the
substantial part of which is in these words, viz. : " This cer-
tificate, &c., witnesseth, that brother James S. McVey, &c.,
is entitled to all the rights and privileges of membership in
the Ancient Order of United Workmen, and to participate in
the beneficiary fund of the order, to the amount of two thou-
sand dollars, which sum shall, at his death, be paid to George
K. McVey, brother. This certificate is issued upon the ex-
press condition that the said James S. McVey shall, in every
particular, while a member of said order, comply with all the
laws, rules and requirements thereof." The action is by the
beneficiary, showing the death of James S. McVey, and claim-
ing the $2,000 as above stipulated to be paid. A copy of the
certificate is set out in the declaration.

In bar of the action the defendant pleaded to the following effect : that the said James McVey was admitted to membership in defendant's society upon a written application made by him, in which he falsely represented that he did not use alcohol or other stimulants, and was of temperate habits, and that he was admitted to membership by reason of the defendant's reliance on the truth of such representations. The plea then avers that these statements were willfully false, and that thereby the said McVey fraudulently induced the defendant to admit him to membership. The replication to this plea was by confession and avoidance, alleging that the defendant had knowledge of the facts set forth in the plea at the time of the issuance of the benefit certificate sued on, and were therefore "estopped from the said defence in the said plea set up." Obviously, with respect to this issue, the burthen of proof was on the plaintiff. As the record stood the defendant was entitled to judgment, unless the plaintiff proved his estoppel as set forth in his replication. The fraudulent statements on which the certificate in suit had been obtained were conclusively admitted by the course of the pleading.

Nevertheless, the parties at the trial, by implied assent, appear to have pretermitted the effect of the issue thus formed. The plaintiff made no attempt whatever to prove the truth of the facts, or of any of them, interposed by way of estoppel in his replication, and the defendant went into proof of the matters which the record conclusively established in his favor. Inasmuch as the issue in question has been discarded, and has been treated on the trial by both sides as though the facts averred in the plea had been denied instead of being admitted, I have deemed it best to look into the case in the same point of view.

The proofs on the part of the defence showed that, in order to become a member of this society, it was essential for an applicant to obtain the certificate of the corporation's medical examiner, and that such testimonial could not be acquired without answering in writing certain printed questions relative to his health, habits, &c.

Among the questions in this way propounded to the deceased at the time of his application for membership, were the following, viz. : "Did you ever have the delirium tremens ?" This was answered in the negative, as was also the question, "Do you use alcohol or other stimulants?" And to the interrogatory, "What has been your habit in respect to either through life?" the response was, "Good."

Upon this evidence the judge, in the exercise of the power of both judge and jury, thus expresses his conclusions and views; he says : "The second defence is, that James S. McVey made false representations in his application for admission upon material points. The facts are, that the said James certified that he had never had delirium tremens, and that he did not use alcohol or other stimulants, and that his habit in this respect through life had been good. The proofs are overwhelming to the effect that James not only had for years been accustomed to use alcohol and stimulants, but that his habits in this respect could not, by any definition of the word, be described as 'good.' It is equally clear that he had a well marked case of delirium tremens a short time before making the certificate in question. It is also reasonably clear that he died of meningitis of the brain following a debauch. With these facts before me, practically uncontradicted—although most susceptible of contradiction if untrue—I cannot find any right in the plaintiff to recover upon a certificate thus obtained. The defendant society evidenced in the strongest manner its desire to associate in the scheme of benefits only such persons as did not indulge in the liquor habit."

The facts thus found by the court have not been, and could not be, disputed; and the judicial resolution was the necessary result from such premises. No one can doubt that if the truth had been told with respect to the particulars in question, the medical examiner would not have accredited the application, and that the society would have rejected so exceptionable a candidate.

But it is insisted by the counsel of the plaintiff that the replies to the statements touching the habits of life of the

applicant cannot be construed as warranties of their truth, and that such statements and replies relate merely to the admission of the applicant into the society, and that they cannot affect the subsequent contract made by the society stipulating that he should be a participant in the corporate fund to the extent of $2,000.

That this contract in suit does not warrant the truth of the replies of the applicant to the interrogatories, is not in the least doubtful. I am inclined to think that in this class of cases warranties should be regarded as the creatures of plain expression, and not of implication or construction. The certificate sued on contains the contract, and the whole of the contract, between the parties to it, and neither the interrogatories nor the replies to them are mentioned, or even, in the most distant way, alluded to. They are therefore mere representations, not warranted to be true, not part of the agreement; but being intentionally false, with respect to material matters, and having misled the society into the making of this obligation, such obligation is void by force of ordinary legal principles.

Nor does the other position just mentioned, that the fraud related to the creation of the membership and not to that of the certificate containing the subsequent contract, appear to the court to be tenable. It is deemed defenceless on two sides—first, the act of becoming a member of this society is but the first step in the process of obtaining one of these beneficiary certificates, so that the two transactions are so closely connected that they cannot be reasonably separated, the consequence being, that if the initial act from being fraudulent gives way, all subsequent acts founded upon it must fall with it. That this was the original theory of these parties appears from the record itself, for when the defendant, in the special plea already referred to, interposed as a defence the fraudulent acquisition of membership by the deceased corporator, the plaintiff did not demur, but, on the contrary, admitted the legal sufficiency of such fact and sought to avoid it by advancing new matter in his replication.

And, in the second place, it is entirely manifest, from an inspection of the papers in hand, that the fraud attendant on the application for membership was transmitted to the application for the certificate that underlies this action, for in the written petition of the application on the latter occasion there is a clause in these words, viz.: "I certify that the answers made by me to the questions propounded by the medical examiner of this lodge, which are attached to this application and form a part thereof, are true." The questions and answers thus referred to are the same as those already commented on ; and as such fraudulent answers were repeated in procuring the certificate in question, such certificate can have no legal value whatever.

Let the rule for a new trial be discharged.