MARY HOLLAND v. THE SUPREME COUNCIL OF THE ORDER OF CHOSEN FRIENDS.

1. The relation between "The Supreme Council of the Order of Chosen Friends" and a beneficiary member to whom, under its Relief Fund laws, a Relief Fund certificate has been issued, is a contractual relation.

2. The contract of the association with a beneficiary member is made up of the application for such membership, the certificate issued; and the charter, constitution and by-laws of the order, and in its construction and effect does not differ essentially from an ordinary policy of insurance.

3. By the Relief Fund laws of the order persons engaged in certain occupations are excluded from beneficial membership. Among the persons so excluded are retail liquor dealers and bartenders. The deceased, in his application for a Relief Fund certificate, represented that his occupation was that of a printer and his business was pressman, and in his statement to the medical examiner he represented that he was not engaged in the sale or manufacture of wine, beer, or distilled liquors. In fact, his occupation was, at the time of his making the application, and for several years before had been, that of a bartender. *Held,* that the contract of the order to pay benefits was avoided by the false and fraudulent representation by which it was obtained.

4. The suit was brought after the member's death, and in the name of the beneficiary named in the certificate. The defence was that the certificate had been procured by false and fraudulent representations. To meet this defence it was insisted that the certificate was incontestible after the member's death, unless the deceased had been suspended during his lifetime and his death occurred during his suspension. *Held,* that an agreement in the deceased's application for the certificate "that any untrue or fraudulent statement made * * * in this application, or my suspension * * * from the order, shall forfeit my right to all benefits and privileges therein ; and it shall not be lawful in case of my death, during such suspension, for any of my beneficiaries * * * to receive any benefit whatever from the Supreme or any Grand or Subordinate Council," did not estop the association from avoiding the certificate for the fraud and deception, by means of which

the deceased procured the certificate of membership from which he was excluded by the Relief Fund laws of the order. *Wright* v. *Mutual Benefit Association*, 118 *N. Y.* 237, commented on and distinguished.

On rule to show cause why a verdict for the plaintiff should not be set aside.

Argued at February Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the rule, *H. Westbrook Winfield.*

*Contra, John Griffin.*

The opinion of the court was delivered by

DEPUE, J. This suit was brought by Mary Holland on a Relief Fund certificate made by the Supreme Council of the Order of Chosen Friends to James Holland, now deceased. So far as is material to this case the certificate is in these words: "This Certifies, That James Holland of Jersey City, a member of the Council named below, having duly applied therefor is entitled to a benefit of not exceeding two thousand dollars from the Relief Fund of the Order of Chosen Friends, which sum shall in case of death be paid to his wife Mary Holland in the manner and subject to the conditions set forth in the laws governing said Relief Fund and in the application for such benefit." Sealed with the seal of the Supreme Council of the Order of Chosen Friends.

The Supreme Council of the Order of Chosen Friends is a corporation organized under the laws of Indiana. The objects of the organization as expressed in its constitution are : *First.* To unite in bonds of fraternity, aid and protection all acceptable white persons of good character, steady habits, sound bodily health, reputable calling, and who believe in a supreme intelligent being, the creator and preserver of the universe. *Second.* To improve the condition of its membership, morally, socially and materially, by timely counsel in the seven cardinal virtues, and instructive lessons in the seven liberal arts and

sciences, by encouragement in business, and by assistance to obtain employment when in need. *Third.* To establish a relief fund from which members of this organization who have complied with all its rules and regulations may receive the benefit in a sum not exceeding *three thousand dollars* ($3,000), which shall be paid as hereafter provided, upon either of the following conditions, viz. : *a.* When a member becomes disabled by the infirmities of old age ; *provided,* he or she has reached the age of seventy-five years. *b.* When, by reason of disease or accident, a member becomes totally and permanently disabled from following any occupation. *c.* When a member has died. *Fourth.* To establish a fund for the relief of sick and distressed members. *Fifth.* To establish an indemnity fund for the purpose of protecting the relief fund from fraudulent or improper claims by enabling proper investigation to be made in regard to persons admitted as members, and the alleged facts upon which the claim itself is based.

To effectuate the objects of the association, members are divided into two classes—(1) social members and (2) beneficiary members. Social members are those who pay a certain certificate fee and regular dues. These members are entitled to all the honors, rights and privileges of any other members, except that they are not entitled to the benefits of the relief fund, and they are also exempt from contributing to that fund. This fund is in the exclusive control of the Supreme Council. Subordinate councils established by the Supreme Council, to which the social members belong, are, by section 2, article 10 of the constitution of the order, excluded from all control over the relief fund.

Beneficiary membership is obtained by persons who are or become social members upon an application for such membership, to be made upon a form of petition furnished by the Supreme Council. This application must be approved by the supreme medical examiner, and upon approval by the supreme medical examiner, based upon his examination of the applicant, and of the answers made by him to certain questions propounded, a certificate of membership is issued. The certifi-

cate, when issued, entitles the member to $1,000 or $2,000 or $3,000, as the applicant may elect. For such certificate the member is required to pay one assessment for the relief fund, to be applied to the first assessment to be levied after its date, and the same amount on each assessment thereafter made by the authority of the Supreme Council according to the following table:

| At the ages of | | | | On $1,000. | On $2,000. | On $3,000. |
|---|---|---|---|---|---|---|
| 18 and 25 inclusive | | | ...... | $0 35 | $0 70 | $1 05 |
| 26 | " | 30 | " | ...... 0 40 | 0 80 | 1 20 |
| 31 | " | 35 | " | ...... 0 45 | 0 90 | 1 35 |
| 36 | " | 40 | " | ...... 0 50 | 1 00 | 1 50 |
| 41 | " | 45 | " | ...... 0 60 | 1 20 | 1 80 |
| 46 | " | 50 | " | ...... 0 75 | 1 50 | 2 25 |
| 51 | " | 54 | " | ...... 1 00 | 2 00 | 3 00 |

By " the Relief Fund laws " any member of the association is entitled to make application for a beneficiary membership, except that manufacturers of gunpowder and other explosives, retail liquor dealers and bartenders are entirely excluded from beneficial membership.

Whatever may be the *status* of an association of this character in its social, charitable, and purely benevolent features, the relation between the association and such of its members as have become " beneficiary members " under its " relief fund " scheme is essentially a contractual relation. The right of a member to participate in that fund is a right arising from contract, and the disbursements from that fund are not voluntary gifts donated from a charitable or benevolent motive, but payments in fulfillment of contract obligations. The contract of the association with its beneficiary members is made up of the application for such membership, the certificate issued, which is an acceptance of the application, and the charter, constitution and by-laws of the society, and in its construction and effect does not differ essentially from an ordinary policy of insurance. *Bac. Ben. Soc.*, §§ 51, 52; *Niblack Mut. Ben. Soc.*, §§ 163, 164, 165, 166, 166a; *Commonwealth* v. *Wetherbee*, 105 *Mass.* 149.

The deceased made his application for a Relief Fund certificate in December, 1889. The application was made upon a printed form furnished by the Supreme Council, annexed to which was, in approved form, the "Applicant's Statement to the Medical Examiner." This statement contained certain questions and the applicant's answers thereto, and at the foot of the statement the following sentence occurs : " The foregoing are warranted to be full and true answers to the questions proposed." Both the application and the " Statement to the Medical Examiner " were signed by the deceased. On these papers and a personal examination by the medical examiner the certificate was issued. The application was dated December 3d, 1889 ; the certificate was issued December 9th, 1889 ; the deceased died January 5th, 1890. At the time of his death he was a member of the association and not under suspension.

The defence at the trial was that the certificate of beneficial membership was obtained fraudulently by means of false and fraudulent representations. In his application the deceased represented that his occupation was that of a printer, and that his business was pressman ; that he was employed by P. Lorillard, in Jersey City, and had been so employed for nine years. In his statement to the medical examiner he answered in the negative the question : " Are you engaged in the sale or manufacture of wine, beer, or distilled liquors ? " The proof at the trial was that the deceased was employed in the printing department of the works of P. Lorillard for a period of time down to December, 1881 ; that in July, 1883, he was employed in another department of the same works, and left that employment in June, 1884, and that he had not been in Lorillard's employ after that date. It was also proved that after December, 1884, down to his last illness, and within a few days of his death, his employment was that of a bartender. He was so employed in December, 1889, when he made application for his membership in the society. The statement made by the deceased in his application and in his answers to the questions in the statement to the medical examiner with

respect to his occupation was false, and if he had truly represented his occupation he would, by force of the Relief Fund laws, have been excluded from beneficial membership. Whether the statements in the application and the answers to the questions proposed by the medical examiner be regarded as a warranty or simply as representations, they were in a material respect willfully false and fraudulent, and in either event they avoided the contract. *Mac Vey* v. *Order of United Workmen,* 24 *Vroom* 17, 20.

The deceased might have been stricken from the roll of beneficiary members and his Relief Fund certificate cancelled under the provisions of section 6, article 2, of the constitution for the false representation in his application and in the medical examination. He might also, after a trial, have been suspended by the subordinate council of which he was a member for the untrue representations by which he obtained his membership, and his suspension would have avoided his Relief Fund certificate unless he was reinstated as provided for in the general laws of the order and the Relief Fund laws. But these remedies were merely cumulative. The obligation sued on is a contract, on which a suit at law will lie, and the prosecution and defence of such a suit are alike regulated by the rules of practice and procedure and the same legal principles which prevail in actions upon other legal obligations.

To meet the defence made in this case, the plaintiff's counsel contended that the benefit certificate was incontestible in the hands of the beneficiary named in it, unless the member had been suspended during his lifetime and his death occurred during his suspension. This contention was rested upon a stipulation in the deceased's application for beneficial membership, which follows his agreement to pay dues and assessments, and is in these words, viz.: "I further agree that any untrue or fraudulent statement made, or any concealment of facts by me in this application, or my suspension or expulsion from or voluntarily severing my connection with the order, shall forfeit my rights to all benefits and privileges therein; and it shall not be lawful, in case of my death during such suspension, for

any of my beneficiaries, heirs, or their or my representatives, to receive any benefit whatever from the Supreme or any Grand or Subordinate Council of Chosen Friends; and in case of expulsion or voluntary withdrawal from the order, I hereby renounce, for myself, my heirs and representatives, all the benefits granted by said order." *Wright* v. *Mutual Beneficial Association*, 118 *N. Y.* 237, was cited to sustain this position. In that case the certificate of membership contained a provision "that if any misrepresentation or fraudulent or untrue answer or statement has been made, or if any fact which should have been stated to the association be suppressed, the agreement of assurance shall be void." The applicant also warranted the truth of his statement in his application. But the certificate as issued contained the provision that "No question as to the validity of an application or certificate of membership shall be raised unless such question be raised within the first two years from and after the date of such certificate of membership, and during the life of the member therein named." The member died within the two years, and the suit was brought by the assignee of the beneficiary named in the certificate, who took the assignment for value. The court held that the stipulation just referred to served a similar purpose to statutes of limitation and repose; that it was not a stipulation absolute to waive all defences and condone fraud, but provided ample time and opportunity within which they may, and beyond which they may not, be set up. On this construction the court decided that the defence of fraud and fraudulent representations in procuring the certificate could not be set up.

In the New York case the stipulation that no question as to the validity of the policy should be raised after the death of the member was in the certificate which was the evidence of the company's contract, and was precise and explicit, and expressed in plain and unambiguous terms a contract to that effect binding upon the company. In this case the paragraph in question is found only in the application, which was the act of the applicant, and in its language imports only an agreement on his part, and no language or terms are found in it of like import

with that under consideration in the New York case. Nor did the defendant require the aid of this stipulation to perfect its defence to this suit. By section 4 of article 1 of the Relief Fund laws persons engaged in the occupation in which the applicant was employed when his application was made were expressly excluded from beneficial membership. The false and fraudulent representations by means of which he obtained a membership from which he was excluded by those laws are contained in his "Statement to the Medical Examiner," as well as in his application, and having by these fraudulent means, as was said by the Chief Justice, in the McVey Case, "misled the society into making this obligation, such obligation is void by force of ordinary legal principles."

The relief fund is raised by assessments on beneficiary members for the benefit of members of that class, to provide means to pay the just claims of those members whose certificates are a charge upon the fund. These certificates are not for the payment of a specified sum of money, but are simply vouchers that the holder is entitled to a benefit not exceeding a certain sum, to be paid in the manner and subject to the conditions set forth in the laws governing the relief fund. The amount realized upon such a certificate when matured depends upon the condition of that fund. A claim fraudulently foistered upon the relief fund by one member, in violation of the fundamental articles in the constitution of the order, is a fraud upon his associates.

The proof in this case was plenary that this certificate was obtained by positive fraud of such a character as ought, in morals as well as in law, to defeat the fraudulent purpose, and such must be the result on well-settled legal principles, unless the fraud be sheltered behind some barrier which the association itself has provided.

The stipulation upheld in *Wood* v. *Dwarris,* 11 *Exch.* 393, and approved in *Wheelton* v. *Hardisty,* 8 *El. & B.* 232, was that the policy should be indisputable except in cases of fraud. The stipulation in *Kline* v. *National Beneficial Association,* 9 *West. Rep.* 287, giving to the certificate the quality of incon-

testibility, also excluded cases of fraud. The agreement in Wright *v.* Mutual Beneficial Association has been set out above.

Courts incline strongly in favor of a liberal construction of stipulations which save contracts of insurance from forfeiture, but the judicial inclination is equally strong against contracts procured by fraudulent practices. Without considering the question whether an agreement having the effect to constrain a party to abide by a contract procured from him by fraud and deception will receive any legal countenance where such an agreement is part of the very contract which is tainted with fraud, I think it is clear that an agreement which shall be conceded that effect must be expressed in terms that are clear and unambiguous. There is no agreement by the association to that effect in this case, and I fail to comprehend on what principle the agreement by the assured contained in his application can be made available to conclude the association from repudiating a membership from which the deceased was debarred by the Relief Fund laws of the order, and the certificate for benefits which was issuable only to a qualified member, when both the membership and the certificate were obtained by fraud and deception.

The charge of the learned judge that the plaintiff was entitled to recover was erroneous, and the rule to show cause should be made absolute.