Supreme Conclave Improved Order of Heptasophs

v.

Jennie E. Dailey and Francis B. Minch.

[Filed October 19th, 1900.]

1. A certificate, insuring the life of a member of a beneficial society, cannot be assigned by the beneficiary to a creditor of the member insured, even with the concurrence of the member, when such an assignment is forbidden by a by-law of the order.

2. A bill of interpleader, filed by the society, will not validate the assignment.

*Mr. Walter H. Bacon* and *Mr. Samuel H. Grey,* for the defendant Francis B. Minch.

*Mr. William A. Logue* and *Mr. C. H. Sinnickson,* for the defendant Jennie E. Dailey.

Reed, V. C.

On July 3d, 1894, there was issued to J. Frank Dailey, a member in Eureka Conclave, No. 29, of the Improved Order of Heptasophs, located at Bridgeton, New Jersey, a benefit certificate for the sum of $5,000, which certificate was made payable to Jennie E. Dailey, the wife of J. Frank Dailey.

On July 10th, 1894, the said J. Frank Dailey and Jennie E. Dailey assigned all their interest in the said certificate and all moneys to grow due thereon to Francis B. Minch, as security to indemnify and save him harmless from any loss or damage against the charge which he or they may sustain in respect to a certain note for $1,250, bearing date July 6th, 1894, given by J. Frank Dailey, payable three months after date at the Bridgeton National Bank, and endorsed by the said Minch, for the accommodation of the said J. Frank Dailey; and for and in respect of any renewals of the said note, or any part thereof;

also as collateral security for the payment of a certain bond executed by the said J. Frank Dailey to the said Francis B. Minch, dated July 10th, 1894, and payable in one year after date in the sum of $600.

J. Frank Dailey died January 16th, 1898; notice was served by Minch, upon the order, of Dailey's assignment to him. The complainant then filed this bill, and the defendant Minch, as assignee, and the widow of Dailey, as beneficiary, have interpleaded.

The widow insists that under the scheme of insurance and under the terms of the insurance contract the certificate was not assignable, and therefore the $5,000 belongs to her as the beneficiary named in the instrument.

Mr. Minch, on the other hand, claims that the assignment was valid and that he is entitled to be paid the amount which it was assigned to secure. These counter contentions present the principal question involved in the litigation.

The insistence on behalf of the beneficiary is based upon the fact, that by the scheme of insurance as evidenced by the constitution and by-laws, the benefit of the insurance is limited to some one of a class, of which this assignee is not one, and that the contract itself forbids an assignment of the certificate or of the moneys to be paid under its provisions.

The Order of Heptasophs is a beneficial order, organized under the laws of Maryland. One of its objects, set out in its constitution, is to create and maintain by stated and fixed contributions, a benefit fund, from which on satisfactory evidence of the death of a member who has complied with all the lawful requirements of the order, a sum not exceeding $5,000 shall be paid to his beneficiary or beneficiaries, as limited and prescribed in the laws of the order relating to benefit certificates, as he may direct in accordance with the said laws.

By section 350 of the laws of the order, the benefit may be made payable to one or more persons of two classes; the first class includes a list of relatives of the member, and the second class includes any person who is dependent upon a member for maintenance, food, clothing, lodging or education.

Section 352 of those laws, as they existed in 1894, at the time of this assignment, read thus: "A benefit certificate cannot be made payable to a creditor nor to be held in part, nor assigned to secure or pay any debt which may be owing by a member;" and section 353 read thus: "Any assignment of a benefit certificate by a member or beneficiary shall be void."

Section 358 provides for the surrender of a benefit certificate at any time by a member, and the issuance of a new certificate to such beneficiary as the member may designate in accordance with the laws of the order.

By section 351, it is provided that no designation is permitted by will, nor shall a will be permitted to control the appointment or distribution of the rights of any person to any benefits payable by the order.

It is entirely settled that the contract entered into between the order and Dailey is made up of the certificate itself, the constitution and by-laws of the order. *Holland* v. *Chosen Friends, 25 Vr. 492; Golden Star Fraternity* v. *Martin, 30 Vr. 214; Supreme Council of Royal Arcanum* v. *Brashears, 89 Md. 624.*

It is entirely settled that the contract entered into by the order was made with J. Frank Dailey, and that the power conferred upon him to change the beneficiaries named in the certificate deprived the beneficiary of any vested right in such certificate, previous to the death of the insured member. His wife had only a contingent interest, of which she might be stripped at any moment before the death of her husband, by his designation of another beneficiary within the permitted class. This contingent interest, however, was, unless forbidden by the terms of the contract, assignable in equity. An assignment of a mere possibility or expectancy, if made for a valuable consideration in equity, is good as an agreement, and takes effect when the possibility ripens into an actuality. *3 Pom. Eq. Jur. § 1287; Bacon* v. *Bonham, 6 Stew. Eq. 614.*

Nor is there in the transaction itself any natural equity in favor of the wife as against the assignee calculated to induce a court to favor the former. The insurance was effected for the

primary purpose of securing the assignee, not for the purpose of benefiting the wife. She probably joined in the assignment at the request of her husband, without having special knowledge of the nature of the transaction, but it is quite obvious that the policy would not have been written in her favor, if it had not been understood that she would join in its assignment. The question, nevertheless, must be answered, whether the contract itself, which in express terms declares any assignment by the beneficiary void, can be ignored.

It is to be observed that the clause in the contract forbidding the assignment by the beneficiary is one of the most, if not the most, important feature in the scheme of this beneficial order. The purpose of the restriction against assignment is entirely clear. It is designed to provide a fund to be paid to a relative or dependent at the time when death has deprived such beneficiary of the succor and support of the living member. It is of the utmost importance in the accomplishment of this purpose that the beneficiary should be deprived of the power to deal with his expectancy during the life of the member. So the contract put it beyond the power of the beneficiary to defeat this purpose by mortgaging or bargaining away his right to receive the money at the particular time and for the purpose intended. The provision is intended as a guard against the imprudence or improvidence of the beneficiary.

The scheme of which this contract is a part has repeatedly received the approval of the courts. Even in cases where the contract of insurance contained no clause prohibiting assignments by the beneficiary, courts have gone far to find in the policy of the statutes under which the insuring associations were organized some implied prohibition against the right of the beneficiary to assign.

In *Briggs* v. *Earl, 139 Mass. 473,* a husband and a wife had assigned a certificate in the Northeastern Mutual Aid Society as collateral security for the husband's debt. A certificate was written for the benefit of the wife. Neither the statute or certificate contained any express provision relative to the power of assignment by the beneficiary, but only provided that the funds

should not be liable to attachment. The court held the assignments invalid. It was said that the purpose of the statute was to render assistance to widows and orphans of the deceased members or others dependent upon them—"that is to say, after the support and assistance of the member have been withdrawn by death, the corporation then is to step in and supply his place in a measure. The purpose is not to assist wives and children, but widows and orphans."

In *Caddick* v. *Highton, 68 L. J. 11 Q. B. (N. S.) 281,* it was held that the beneficiary under a certificate in the Liverpool Victoria Legal Friendly Society could not, under the legislation appertaining to such societies, assign his interest. In these instances there was no express legislative prohibition against assignment.

So in respect to all insurance effected under the New York State act, concerning the insurance of lives for the benefit of married women. The court of appeals in *Eadie* v. *Slimmon, 26 N. Y. 9,* said the act looked to a provision for the state of widowhood and for children, and it would be a violation of the spirit of the provision to hold that the wife could sell or traffic with her policy as though it were realized personal property or an ordinary security for money. This case was followed in *Barry* v. *Equitable Life Assurance Society, 59 N. Y. 587; Barry* v. *Brune, 71 N. Y. 262; Wilson* v. *Lawrence, 76 N. Y. 585; Brummer* v. *Cohn, 86 N. Y. 11.*

In *Frank* v. *Mutual Life Insurance Co., 102 N. Y. 266,* it was held that such an assignment by the wife was voidable at her option; and in *Brick* v. *Campbell, 122 N. Y. 337,* it was held that a subsequent removal of the disability to assign would not validate the prior assignment.

The ground taken in these cases seems to have been that to permit such assignment would be to defeat the purpose of the insurance as manifested by the legislation under which the schemes of insurance were organized.

As expressed by Mr. Justice Barrett in *McCord* v. *McCord, 40 App. Div. 275,* "it would not only be against public policy, but it would be subversive of the whole plan of benevolence as embodied in the constitution and by-laws."

It is true that in the present case the prohibition is not to be found in legislation, but in the contract itself; but I do not perceive that it is on that account the less effective.

Mr. Justice Brewer, speaking for the federal supreme court in *Burck* v. *Taylor, 152 U. S. 634,* respecting an assignment of an interest under a contract to build a capitol for Texas, in which contract it was agreed that it should not be assigned without the consent of the state, said: "It is true that we have no construction of a statute, but only the terms of a contract; that contract was as binding on the one party as upon the other. * * * It was a promise which entered into and became one of the terms of the contract; one which was binding not only upon the party, but upon all others who sought to acquire rights under it."

Judge Allen remarked in *Devlin* v. *Mayor et al., 63 N. Y. 17:* "Parties may in terms prohibit the assignment of any contract, and declare that neither personal representatives nor assigns shall succeed to any rights in virtue of it or be bound by its obligation."

The recognition of the right of the assignee to any part of this money would practically nullify the effect of those decisions of our own court which holds that a member can change his beneficiary only in the method pointed out by the constitution and by-laws.

It is perceived that, granted the power of the beneficiary to assign an interest during the life of a member, it follows that a member, with the consent of the beneficiary, could bring about the same purpose by assignment as would be accomplished by a new nomination made in conformity with the plan of insurance contained in the constitution and by-laws. Indeed he could accomplish much more for the person thus indirectly nominated need not be within the class of beneficiaries to which the by-laws restricts a nomination.

The counsel for the assignee presses with much force the argument that the assignment by the wife is to be regarded as a covenant to pay the assignee when the wife came into possession of the insurance money.

The assignment of possibilities and expectancies and future

acquired property in equity, has been explained upon the theory that the assignment operates as a contract by the assignor to convey the legal estate and interest when it vests in him, and that equity subsequently enforces such a contract.

Mr. Pomeroy is not satisfied with this theory, but thinks that the assignment passes immediately a present possibility which is changed into an assignment of the equitable ownership as soon as the property is acquired. *3 Pom. Eq. Jur.* §§ *1287, 1288.*

If the assignment is to be regarded merely as an agreement to assign, then the point made by the counsel for the widow seems pertinent, namely, that the agreement was made for the benefit of the husband. It was executory until the money came to the hands of the assignee. *Warwick* v. *Lawrence, 16 Stew. Eq. 183.*

If, on the other hand, an equitable interest passed *in præsenti,* then the assignment encountered the prohibitory clause in the by-laws. Indeed, the purposes of the prohibitory clause seems to forbid all assignments of whatever character, whether legal or equitable, and a discussion of the theory upon which equitable assignments rest is, in my judgment, of little moment.

Again it is insisted that the money is in court and that the question as to its disposition by this court is one differing from that which would have been presented had the assignee brought an action against the company, in which action the company had set up the prohibitory by-law.

This view obviously rests upon the theory that the enforcement of the by-laws is within the discretion of the company, or those officers of the company who paid the money into court; and that by such payment into court, they waive any objection to a payment to the assignee.

I am unable to see, however, how such payment can be so interpreted. By the payment into court under the bill of interpleader, the order admitted nothing, but that they were bound to pay some one. The order did not propose to incur the expense of litigating the question, which one of the two claimants was so entitled, but left them to pay for the litigation. By tak-

ing this course they no more admitted the right of the assignee than the right of the widow.

There is a class of cases in which the effect of filing an interpleader has been considered. The class includes those cases where a member has attempted to change his beneficiary by will or by assignment, or in some way other than the one pointed out by the charter or the by-laws of the order—that is, by the written consent of the order. In those instances the reason for the restriction is that the order may have information of the changes of the beneficiary; therefore, the restriction is for the benefit of the order itself. If the payment into court would in any instance have effect as a waiver, it would seem to be in this class. But it was held in *Grand Lodge A. O. U. W.* v. *Connolly, 13 Dick. Ch. Rep. 180,* that it made no difference whether the question arose under a bill of interpleader or not, the member must revoke his designation of a beneficiary and appoint a new one in the way pointed out by the by-laws of the order.

Under the contract, therefore, I am constrained to the conclusion that the assignment under which the assignee claims was invalid, and that the money must be paid to the beneficiary.