*30 Vroom.*           Golden Star Fraternity v. Martin.

THE GOLDEN STAR FRATERNITY, PLAINTIFF IN ERROR,
v. LYMAN D. MARTIN, DEFENDANT IN ERROR.

1. The authority conferred upon associations incorporated under the "Act to incorporate benevolent and charitable associations," by the supplement thereto approved March 2d, 1883, and the further supplement thereto approved April 2d, 1886, to make contracts with their members for the payment of death benefits, is authority to make contracts of the nature of life insurance. So far as those supplements purport to authorize contracts of ordinary life insurance their enactments are ineffectual, for such an object is not within the title of the acts; but so far as they authorize contracts whereby the fund to be paid at death of the member is to go as a gift among the class of persons named in the acts, their enactments are not objectionable, because that object is within the title of the acts.

2. The relation created by a "beneficiary certificate," issued to a member by an association so incorporated, is contractual and the contract is to be discovered in its language, read in connection with the rules and by-laws of the association and the above-mentioned act and its supplements, and is subject to the same rules of construction as other contracts.

3. The constitution of such an association provided for the establishment of a beneficiary fund, out of which, on death of a member who had complied with certain requirements, a sum should be paid "to whom" such member should direct. It issued a beneficiary certificate to Lizzie P. Martin, and thereby contracted to pay, on her death (she having complied with the requirements, &c.), a certain sum to her mother. By the rules of that association Lizzie P. Martin could surrender that certificate and obtain a new certificate, payable to another beneficiary dependent on her. The mother died before Lizzie, and the latter died without having designated a new beneficiary. *Held—*
(1) That the contract thus made did not bind the association to pay the fund to the personal representative of Lizzie P. Martin, because such a contract was not within the power of the association and was inconsistent with the plan of its beneficiary fund, and (2) that it did not bind the association to pay the fund to the personal representative of her deceased mother, because she acquired no vested interest or property in the fund, but only a possibility or expectancy dependent on the will of her daughter.

4. Courts can only interpret and enforce contracts of such associations with their members according to their terms, and cannot correct them if their necessary construction does injustice.

On error to Essex Circuit.

The schedule annexed to the declaration contained in the record shows that plaintiff's action was founded upon the following instrument:

### "THE GOLDEN STAR FRATERNITY.

*"Prudens Futuri.*

"BENEFICIARY CERTIFICATE.

"This certificate issued by authority of the Supreme Council of the Golden Star Fraternity, witnesseth: That Lizzie P. Martin, a member of Excelsior Council, No. 3, of Newark, N. J., is entitled to all the rights and privileges guaranteed to beneficiary members of the Fraternity by our constitution and laws, and issued upon the express condition that she shall, while a member of said Fraternity, faithfully comply with all the laws, rules, regulations and requirements of said Fraternity, otherwise it shall be of no effect, and in case she is in good standing at the time of her decease, then the person or persons hereinafter named shall be entitled to the amount of one assessment, not exceeding the sum of one thousand dollars, or should she become totally disabled for life while a member of the Fraternity in good standing, so as to prevent her following her own or any other avocation, provided such disability did not arise from any immoral conduct on her part, then upon satisfactory proof of such total disability she shall be entitled to one-half of the above-mentioned amount, the remaining one-half to be paid at the time of her decease, and she now directs that in case of her decease it be paid to C. S. Martin (her mother).

"No. 582.    In witness whereof we have caused this to be signed by our Supreme Moderator and Supreme [L. S.]    Secretary, and the seal of this Supreme Council attached, this twelfth day of January, eighteen hundred and eighty-five.

"J. B. FAITOUTE,                          I. A. LOOKER,
"*Supreme Secretary.*              *Supreme Moderator.*"

The declaration contains three counts.

The first count grounds plaintiff's claim upon that instrument as entitling the administrator of Charlotte S. Martin, deceased, to recover from defendant $1,000 on the death of Lizzie P. Martin, and avers an assignment from said administrator to plaintiff.

The second count grounds plaintiff's claim upon the same instrument as entitling the administrator of Lizzie P. Martin, deceased, to recover from defendant $1,000 upon her death, and avers an assignment from said administrator to plaintiff.

The third count is for money had and received.

The plea is the general issue.

The cause was tried before the court without a jury, and the finding having been for the plaintiff, judgment was entered thereon, and this writ of error was brought.

For the plaintiff in error, *Philip W. Cross.*

For the defendant in error, *Thomas N. McCarter, Jr.*

The opinion of the court was delivered by

MAGIE, J.   None of the assignments of error need be considered except that which challenges the finding of the trial judge, upon the ground that, upon the facts before him, a finding in favor of defendant in error was unwarranted in law.

The facts established by uncontradicted testimony or admitted by the parties are, in substance, these: Lizzie P. Martin was admitted as a member of Excelsior Council, No. 3, of Newark, New Jersey (a council of the Golden Star Fraternity), early in January, 1885, and on January 12th, 1885, there was issued to her the beneficiary certificate, a copy of which precedes this opinion.   Charlotte S. Martin, the beneficiary named therein, was the mother of Lizzie P. Martin, and died March 15th, 1888.   Lizzie P. Martin survived her, and faithfully complied with all the laws, rules, regulations and requirements of the Fraternity, and was in good standing therein at the time of her decease, which occurred March 2d, 1894.

. The Golden Star Fraternity was incorporated by the filing of a certificate dated January 21st, 1882, which recited as authority for its assumption of corporate existence the "Act to incorporate benevolent and charitable associations," approved March 9th, 1853. An act of that title was approved on that date, but was repealed by the revision, and in its place was substituted the act of the same title which was approved April 9th, 1875 (*Rev., p.* 79), to which latter act the certificate was doubtless intended to refer. *Gen. Stat., p.* 149.

Among the objects of the organization expressed in its constitution was the following :

"Sec. 3. To establish a beneficiary fund from which on satisfactory evidence of the death of a member of the Fraternity, who. has complied with all its lawful requirements, a sum not exceeding two thousand dollars ($2,000) shall be paid to whom he or she may direct."

The constitution and rules of the Fraternity do not seem to provide for the terms of the certificate indicating the rights of a member in such fund, commonly called a beneficiary certificate, but by section 12 of article 6 it is provided as follows :

"Beneficiary members may, at any time when in good standing, surrender their certificate and have a new one issued, payable to such beneficiary dependent upon them as they may direct, upon the payment of a certificate fee of fifty (50) cents."

After the death of Charlotte S. Martin, the beneficiary, Lizzie P. Martin, the member, did not surrender her certificate, nor did she name a new beneficiary.

After the death of Lizzie P. Martin, administration was taken out upon the estate of Charlotte S. Martin, and her administrator assigned her claim upon the beneficiary certificate to defendant in error.

Administration was also taken out upon the estate of Lizzie P. Martin, and her administrator assigned her claim upon the beneficiary certificate to defendant in error.

Defendant in error was a brother of Lizzie P. Martin, and

he with two other brothers are her next of kin. They have also assigned any claim under the beneficiary certificate to defendant in error.

Upon these facts the trial judge found that defendant in error was entitled to recover from the Fraternity the one thousand dollars ($1,000) named in the beneficiary certificate. Under the assignment of errors now being considered, plaintiff in error claims that no legal liability on its part to pay that sum to defendant in error is established.

Before considering the matter thus presented, I think there is a preliminary question which ought to be disposed of, although for obvious reasons it has not been raised by the parties.

The beneficiary certificate issued by plaintiff in error is plainly a contract of the nature of life insurance.

The act to incorporate benevolent and charitable associations, under which I have assumed that plaintiff in error acquired its corporate powers, and the supplements to that act which were in existence in 1882 declare the objects of such associations to be the relief or support of members rendered incapable of attending to their usual occupation or calling by sickness, casualty or other cause, the decent interment of deceased members and their widows, benevolent and charitable relief to persons not members and other charitable purposes.

In 1883 a further supplement to the same act was passed which, by its second section, enacted that it should be lawful for associations incorporated under the original act to contract with their members to pay death benefits according to their rules and by-laws, and to agree to pay the same to the "husband, wife, father, mother, brother, sister or legal representative of such member after his or her death, which contract the beneficiary therein named shall have full legal power to enforce in proceedings at law or equity." *Pamph. L.* 1883, *p.* 57. By a further supplement approved April 12th, 1886, the words "son and daughter" were added to those contained in the supplement of 1883.

In a case in the Supreme Court, Mr. Justice Garrison sug-

gested the question whether the legislature could endow such associations with the power to carry on the business of ordinary life insurance, but as the question was not required to be solved for the decision of that case, no opinion was expressed thereon. *State* v. *Taylor*, 27 *Vroom* 49.

It is not open to doubt that, under a title declaring the object of the act to be the incorporation of benevolent and charitable associations, it would not be within legislative power to authorize such associations to engage in any business having neither a benevolent nor charitable purpose. The grant of such authority not falling within the expressed object of the title, would be void under our constitutional provision on this subject as construed by decisions of this court too well known to require citation.

Turning to the supplement of 1883 above set out, it appears that it was designed to empower such associations to contract to pay " death benefits" according to their rules and by-laws, but such contract is to be limited to the payment of such death benefits, after the death of the member, to certain specified relatives or connections of the member or to his or her legal representative.

It is obvious that such a contract is of the nature of a contract of life insurance. But so far as it provides for the payment of death benefits to the near relatives and connections of the deceased member as a gratuity to them, it is life insurance having a benevolent purpose. Authority to make such contracts of life insurance, in my judgment, could be conferred upon such associations under the title of this act.

But the act also authorizes a contract to pay death benefits to the legal representative of a deceased member. When there is no context to indicate that the phrase " legal representative" is to be taken as meaning some other relative, it is to be considered as meaning the executor or administrator of a deceased person. *Lodge* v. *Weld*, 139 *Mass.* 499. A contract to pay death benefits to the member's executor or administrator is obviously a contract of ordinary life insurance. Upon the member's death his estate would be increased by

the sum thus contracted to be paid, and the transaction would have no benevolent or charitable feature whatever. Authority to make such a contract is not, in my judgment, within the title of this act.

But the whole powers conferred by this act do not therefore fail.

The power to contract to pay death benefits to the member's legal representative not being within the title of the act, fails to be conferred. But the power to make contracts to pay death benefits as gratuities to the deceased member's relatives within the class named in the act is not thereby affected. The former power is distinctly separable from the other powers conferred, and may be eliminated from the act without any impairment of what remains. *Rader* v. *Union,* 10 *Vroom* 509; *Evernham* v. *Hulit,* 16 *Id.* 53; *Hendrickson* v. *Fries, Id.* 555.

The result is that, in my judgment, the legislature has conferred powers upon the plaintiff in error to make such a contract as seems to be contained in the beneficiary certificate relied on in this case.

It is proper to note that the prohibitions contained in the supplement to the Insurance Companies act, approved April 4th, 1889 (*Pamph. L., p.* 174), which was before Mr. Justice Garrison in State *v.* Taylor, or in the supplement to the Benevolent and Charitable Associations act, approved March 11th, 1893 (*Pamph. L., p.* 232), cannot in any respect impair the contract of the certificate made on January 12th, 1885.

Taking up the question presented by the assignment of error now under consideration, it is obvious that its solution is to be reached by a determination of the true relation established by the facts to have existed between Lizzie P. Martin, the member, and Charlotte S. Martin, the beneficiary, respectively, and the Golden Star Fraternity, the plaintiff in error.

It is well settled that the relation created by such beneficiary certificates as that before us is contractual in its character.

The contract between the association and its beneficiary

members is to be discovered in such a case from the beneficiary certificate issued to the member, read with the rules and by-laws of the association and the statute from which it obtained its corporate powers. *Holland* v. *Chosen Friends,* 25 *Vroom* 490; *Bac. Ben. Soc.,* § 161. The contract, when discovered, is to be construed and given force and effect as other contracts upon a similar subject.

Reading the beneficiary certificate before us, it appears that plaintiff in error thereby contracted with Lizzie P. Martin, one of its members, that in consideration of acts to be performed by her it would perform one of two acts, viz., first, to pay to her, in case she became totally disabled for life, one-half of the sum named therein and to Charlotte S. Martin the other half, upon the death of Lizzie P. Martin, or, second, in case Lizzie P. Martin did not become so disabled then, upon her death, to pay the whole of the sum named therein to Charlotte S. Martin.

Reading it in connection with the by-laws and rules of the Fraternity, Lizzie P. Martin was empowered to surrender to plaintiff in error this certificate and to require it to issue a new certificate of like character but payable to another beneficiary, who must be a person dependent on her.

But as the power of plaintiff in error to make this contract was derived from the provisions of the supplement of 1883, which have been above construed to permit such contracts only in favor of persons among the class of relatives and connections enumerated therein, it is obvious that the new beneficiary selected by her must be one of that class.

Such being the terms of this contract, let us next inquire what rights Lizzie P. Martin acquired thereunder. Had she become totally disabled within the meaning of the clause contained in the certificate, she undoubtedly might have required the payment to her of one-half of the sum therein mentioned. But that contingency did not happen, and the inquiry is therefore to be limited to the rights acquired by her, she having survived her mother, the beneficiary, without having received any part of the sum named in the certificate.

It appears by the opinion of the trial judge in the court below that his conclusion in favor of defendant in error was based on the theory that after the death of the beneficiary, no new beneficiary having been named, the fund became vested in the insured, and at her death was payable to her administrator, as in the case of ordinary life insurance.  13 *Am. & Eng. Encycl. L.* 654.  I am unable to adopt this theory for several reasons.   In the first place, if the contract is susceptible of this construction, it is not a contract within the power of the Fraternity to make, for, as we have seen, it is not authorized to make ordinary contracts of life insurance. Next, the theory ignores the expressed provisions of the constitution, to the effect that on the death of a member the sum paid from the beneficiary fund is to be paid to a person designated by the member.  Lastly, the contract cannot be construed as vesting in the member any interest in the fund. By such contracts the member acquires no property in the benefit, but only a power to designate a beneficiary.  *Bac. Ben. Soc.*, § 237 ; *Nib. Mut. Ben. Soc.*, § 201 *et seq.; Barton* v. *Provident Mutual Association,* 63 *N. H.* 535 ; *Hellenberg* v. *District No. 1, I. O. of B. B.,* 94 *N. Y.* 580.  Many other cases to the same effect are to be found in the notes to the text-books above cited.

Therefore the conclusion below cannot, in my judgment, be supported upon the ground there taken, that upon the facts the defendant in error had made out his claim under the assignment from the administrator of Lizzie P. Martin, upon which the second count of the declaration was based.

But if the finding below was warranted by the facts upon any ground within the issue made by the pleadings, it ought not to be disturbed.

It has been strenuously argued that upon the facts established in this case Charlotte S. Martin, the beneficiary, acquired a vested right in the sum named in the certificate, which right, if Lizzie P. Martin continued in good standing in the Fraternity until her death, and did not surrender the certificate and designate a new beneficiary, could be enforced

by the administrator of Charlotte S. Martin. The contention is that the interest of a beneficiary named in such a certificate in the fund to be eventually paid is identical with the interest acquired under a life insurance policy by the person to whom by its terms a sum is to be paid upon the death of the insured.

It seems to be the admitted doctrine that when a contract is made to pay B a sum of money at the death of A by an ordinary life insurance policy, the title to such money becomes vested in B, and that his interest cannot be changed or divested without his consent. *Bliss L. Ins.*, § 318; *Whitehead* v. *New York Life Insurance Co.*, 102 *N. Y.* 143. Doubtless the interest of such a beneficiary is dependent upon the policy being kept alive by the payment of premiums and the performance of the required conditions. But if the policy is kept alive until the death of the insured, the beneficiary may recover the amount of the insurance, and this court has held that when such a policy is kept alive for a period by others for their own benefit, yet that the beneficiary named in the policy is entitled to a proportionate part of the insurance in proportion to the amount of premiums previously paid. *Landrum* v. *Knowles*, 7 *C. E. Gr.* 594.

But a beneficiary named in a certificate such as is now under consideration does not stand in a like position. By the terms of such contracts, the beneficiary may be changed by the mere will of the member and without the beneficiary's consent. In such case the right of the beneficiary is not property, but a mere possibility or expectancy dependent on the will of the member to whom the certificate issued. For this reason the beneficiary's interest in the certificate and contract evidenced thereby differs totally from the interest of a beneficiary named in an ordinary life insurance policy containing no provision for the designation of a new beneficiary. The cases, so far as I can discover, are agreed upon this doctrine. They may be found collected in *Bac. Ben. Soc.*, §§ 292, 304 *et seq.*; *Nib. Mut. Ben. Soc.*, § 201.

But if this contention could prevail it would not tend to support the finding. The contract in this case did not pro-

vide in what manner the sum named in the certificate should be disposed of in case of the death of the beneficiary before the member. By the beneficiary's prior death her interest, if it could be deemed to be vested, was divested and her administrator took nothing under the contract.

The result is that defendant in error acquired no right to the money under the administrator of Charlotte S. Martin.

It is scarcely necessary to add that there is nothing in the facts which will support the claim that plaintiff in error is liable for this sum as for money had and received. Its liability arises out of an express contract, and there is nothing to raise an implied contract in favor of either the administrator or the next of kin of Lizzie P. Martin.

It cannot be said that this result is entirely satisfactory. By the rules adopted by plaintiff in error a member can only substitute as a beneficiary some person dependent upon him, and by law the selection must be from a limited class of persons. It may occur, and there are reasons to believe that in this case it was the fact, that the member had no person within the prescribed class dependent upon him. In such case no substitution can take place, and the result follows that the Fraternity escapes the payment of the sum for which the member has been paying his dues or premiums. But we cannot correct this grievance, if it be one; we can only interpret the law and the contract of the parties. As upon our interpretation thereof, plaintiff in error is not bound to the payment of the sum named in the certificate, under the circumstances of the death of the beneficiary named before the member and the failure of the member to substitute another beneficiary, the finding below was erroneous and the judgment thereon must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BOGERT.  9.