THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED
WORKMEN OF NEW JERSEY

*v.*

LYDIA GANDY et al.

[Filed October 1st, 1902.]

1. A beneficiary certificate of the Ancient Order of United Workmen declares that it is issued upon the express condition that the member shall in every particular comply with all the laws, rules and regulations of the order. The certificate and the constitution and standing regulations of the order constitute the contract which controls the payment of benefits.

2. The regulations provide that in changing his beneficiary, the member shall fill out the blank form on the back of his certificate, authorizing the change, and shall have his signature thereto attested by the recorder of his lodge with the seal of the lodge attached, or by some civil officer qualified to administer oaths. The blank form on the back of the certificate contains a revocation of the preceding direction for payment of the benefit and an express order to pay it to the newly-selected beneficiary. The regulations also declared that this provision might, in special cases, be waived by the grand lodge at its option. A member had designated his wife as his beneficiary. She predeceased him. Some years after her death the member attempting to change his beneficiary without filling in or signing the blank form on the back of his certificate, or in terms revoking his former appointment or expressly directing payment to a new beneficiary, but by declaring in a separate signed affidavit, that he desired the change in favor of the new beneficiary. The grand lodge did not waive the observance of the provisions recited.—*Held*, this attempted appointment of a new beneficiary did not comply with the rules of the order by which the members had agreed to be bound, and was incompetent to take away the benefit from the member's children who were entitled to it by the standing regulations of the order, unless other direction had been effectually made.

Grand Lodge A. O. U. W. of N. J. v. Gandy.

3. The regulations also provide that each member should designate the person who might at his death receive his benefit, but that such person in every instance should be a member of his family, or related to him by blood, or be dependent upon him, or be his affianced wife. The member stated in his affidavit that "it is solely because of the dependency of the said L. G. that he desires the change in her favor," &c. In actual fact L. G. was not a member of his family, nor related to him by blood, nor a dependent upon him, nor his affianced wife. She was a servant in his employ to do household work, for agreed weekly wages.—*Held,* L. G. was not within any class from which a member of the order had power to select a beneficiary, and the attempted appointment failed for this reason.

4. The attempted new appointment being nugatory the member's children are entitled to the benefit fund under the standing regulations of the order.

On bill of interpleader. Hearing on the claims of interpleading defendants.

This case arises under an interpleader bill filed by the Grand Lodge of the Ancient Order of United Workmen of New Jersey, an unincorporated and fraternal benefit society, doing business in the State of New Jersey. The defendants are Mattie George and Harry B. Middleton, children who have survived their father, Frank P. Middleton, and Lydia Gandy, who appears to have been named as a beneficiary in a certificate issued by the complainant society, under circumstances hereinafter narrated.

The bill shows that Frank P. Middleton, on December 16th, 1880, became a member of the complainant society, and that he continued his membership until his death, on February 16th, 1902; that pursuant to the laws of the society, he designated his wife, Mary Middleton, as his beneficiary to receive, at his death, the sum of $2,000 from the society's beneficiary fund; that Mary Middleton predeceased her husband. The bill alleges that, under the laws of the society, from Mary's death until Frank P. Middleton should make another lawful designation of a beneficiary, his two children, the defendants Mattie George and Harry B. Middleton, became and remained his lawful beneficiaries, and that said Frank P. Middleton died leaving his said two children him surviving.

The bill further alleges that, on the 26th of December, 1901,

Frank P. Middleton made an affidavit whereby he purported to set out circumstances which would be sufficient to show that Lydia Gandy bore to him the relation of a dependent (which, being established, would bring her into the class of persons designated as beneficiaries under the laws of the complainant society), and sent the affidavit to the office of the grand recorder of the complainant society, pinned to the original beneficiary certificate issued to him on his admission to the order; that thereupon, unadvisedly and without warrant of law for so doing, and in violation of the laws of the order, a new beneficiary certificate was issued, wherein Lydia Gandy was designated as beneficiary of the said Frank P. Middleton; that the new beneficiary certificate remained in the possession of Middleton at the time of his death, and the mistake of the complainant society's officer in issuing it was not discovered until after his death.

The bill then sets out the clause governing the society's members in making a change in the designation of beneficiaries (which may be found on page 27, paragraph 7, of the constitution and standing regulations of the society), in words following:

"7. *Change of Beneficiaries.*—Any member desiring to change his beneficiaries may do so in the following manner: He shall fill out the blank form on the back of his beneficiary certificate authorizing the change; he shall have his signature attested by the Recorder of his Lodge and the seal of the Lodge attached thereto, or attested by any civil officer qualified to administer oaths. When this is done he shall deliver his beneficiary certificate to the Recorder of his Lodge, together with a fee of fifty cents. The Recorder shall forward the said certificate and fee to the Grand Recorder, who shall make a record of the change on the books of the Grand Lodge and shall issue a new certificate in lieu thereof, payable as directed on the back of the surrendered certificate. The new certificate shall bear the same number as the old one, which shall be safely filed and preserved. The provisions hereof, in special cases, may be waived by the Grand Lodge at its option."

The bill further alleges that Middleton did not affix his signature to the form provided on the back of the original certificate for making a change of a beneficiary, and that there was no attestation of his signature by the recorder of his lodge, or in

any other way, and that he did not, in the manner required by the laws of the society, change his beneficiary, yet, through inadvertence, a new beneficiary certificate was issued to him.

The bill then narrates that Miss Gandy, under the new certificate, and Mr. Middleton's two children, under the laws of the society, claiming the new certificate to be inefficient, each claim from the complainant the payment of the benefit sum of $2,000. It contains the usual allegation of non-collusion of the complainant with either party, and that it has not been indemnified by either, and concludes with a prayer that, upon its payment into this court of the benefit sum of $2,000, the defendants may be decreed to interplead and the complainant may be discharged from all liability to either of them in the premises.

A decree has been taken against the defendants adjudging that the bill of interpleader was properly brought by the complainant; that it is entitled to relief, and that it be dismissed from the further prosecution of the suit, with its costs and a fee, and be discharged from all liability to either of the defendants in the suit by reason of the fund in question, and that the defendants interplead and adjust their several demands in controversy in this suit as between themselves.

The defendants have filed their interpleading claims. Lydia Gandy under the new certificate issued to her, and Mattie George and Harry B. Middleton, children of Frank B. Middleton, claiming under the regulations of the society (found on page 26, in paragraph 6, of the constitution), of which the applicable part is as follows:

"6. *Order of Payment to Beneficiaries.*—If one or more of the beneficiaries shall die during the lifetime of the member, the surviving beneficiary or beneficiaries shall be entitled to the benefit equally, unless otherwise provided in the beneficiary certificate, and if all the beneficiaries shall die during the lifetime of the member, and he shall have made no other direction, the benefit shall be paid to his widow, if living at the time of his death; if he leaves no widow surviving him, then said benefit shall be paid, share and share alike, to his children,"

with further limitations not applicable in this case.

On these pleadings the respective parties submitted testimony and argued the cause.

*Mr. Florance Garrison Toram* and *Mr. Edwin G. C. Bleakly,* for Mattie George and Harry B. Middleton.

*Mr. Thomas B. Hall,* for Lydia Gandy.

GREY, V. C.

The relation created by a certificate issued by a beneficial association, such as the complainant society, has been authoritively declared to be contractual. The terms of the contract are to be discovered in the language of the certificate, read in connection with the rules and by-laws of the society. It is to be construed and given force and effect as other contracts are which deal with similar subjects. *Golden Star Fraternity* v. *Martin, 30 Vr. 213 (Court of Errors and Appeals).*

In that case the plaintiff in error was an incorporated society. *Golden Star Fraternity* v. *Martin, 30 Vr. 210.* In the present case the complainant is a voluntary beneficial association, not incorporated. The statute of 1885 (*Gen. Stat. p. 2588 § 324*) enables a voluntary association, organized for benevolent purposes, to be sued by its recognized name, but does not authorize it to bring a suit in the name of the organization. *Mayer* v. *Journeymen Stonecutters' Association, 2 Dick. Ch. Rep. 520.* In the suit now at bar the complainant did, in fact, prosecute this suit by its recognized name, without opposition; has paid the fund in dispute into court, and has been dismissed, and is no longer a litigant. The present parties in court are Miss Gandy, on one side, and Mr. Middleton and Mrs. George, on the other. There is no question of their capacity to sue and be sued, so that whatever may have been the infirmity of the complainant in this interpleader suit to bring its action by its recognized name, it is no longer of any significance.

A contract entered into with a voluntary unincorporated association does not differ, in its essential nature, from one entered into with an incorporated body. The principles declared by the

court of appeals in the above-cited cases are therefore applicable to the decision of this case.

The standing regulations of the Ancient Order of United Workmen prescribe that each member shall designate the person to whom the benefit, due at his death, shall be paid. Mr. Middleton designated his wife as the person to whom his benefit should be paid. She predeceased him. The regulations provide for this contingency, and declare that if the beneficiary dies during the lifetime of the member, and he makes no other direction, the benefit shall be paid, in the first place, to his widow, if living at the time of his death, and if not, then share and share alike to his children.

Mrs. Middleton having predeceased Mr. Middleton, this rule operated to give the benefit to Mr. Middleton's children, Mrs. George and Harry B. Middleton, unless Mr. Middleton, in his lifetime, prevented the operation of this standing regulation of the society, by making some effectual direction changing his beneficiaries from his children to some other person who was within some of the classes from which he might select.

Miss Gandy, the other party in this controversy, insists that there was a direction in her favor made by Mr. Middleton, in accordance with the regulations of the order, whereby he changed his beneficiary, so that she (Miss Gandy), and not Mr. Middleton's children, is entitled to receive the benefit.

Miss Gandy's claim is opposed by the Middleton children as invalid, upon two grounds:

*First.* That the mode in which Mr. Middleton attempted to change his beneficiary, selecting Miss Gandy in the place of his children, did not accord with the requirements of the standing regulations of the society.

*Second.* That even if there was a substantial compliance by Mr. Middleton with the methods prescribed by the rules of the order in making the change, still Miss Gandy was not within any class from which, under the rules of the order, a beneficiary could be selected.

As to the first point, the rules of the order require (paragraph 7) that the member desiring to change his beneficiaries

"shall fill out the blank form on the back of the beneficiary certificate authorizing the change; he *shall* have his signature attested by the Recorder of his lodge and the seal of the lodge attached thereto, or attested by any civil officer qualified to administer oaths."

The regulations further require that the member *shall* deliver this certificate to the recorder of his lodge, with the fee, and provision is made that the recorder shall forward the certificate and fee to the grand recorder, who shall make a record of the same in the books of the grand lodge, and issue a new certificate in lieu thereof, payable as directed on the back of the surrendered certificate. The new certificate shall bear the same number as the old one, which shall be safely filed and preserved. The regulations further declare that these provisions, in special cases, may be waived by the grand lodge at its option.

It will be noted that the above specification of the steps to be taken to effect a change of beneficiaries is not only mandatory upon the members, but that it deals with and declares the method whereby, in special cases, the observance of the prescribed provisions may be waived. In such a contract the prescribed method must be followed, unless waived in the manner agreed upon in the contract. No other mode of waiver can be shown without departing from the terms of the agreement.

In the case in hand Mr. Middleton did not make the change in favor of Miss Gandy in the mode prescribed by the rules of the order, nor did the grand lodge exercise its option by waiving the observance of the provisions of those rules. What Mr. Middleton did was to send an affidavit, made by himself, on December 26th, 1901, before a notary public, deposing that Miss Gandy had been in his employ and a member of his family for a number of years last past; that she had no means of support, and was wholly dependent upon such wages or remuneration as she received from him for her support; that in case of his death she would be entirely without means of a livelihood, and that it was solely because of the dependency of Miss Gandy that he desired the change, in her favor, of his benefit certificate, his wife and former beneficiary being deceased. This affidavit appears in this case, pinned to the original benefit certificate. The original benefit certificate is stamped "Cancelled Dec. 27th, 1901,

J. H. Lippincott," who is shown to have been the grand recorder of the order. Immediately under the stamping cancellation, on the face of the original benefit certificate, these words are written: "This certificate was canceled and a new one issued to Lydia Gandy in error. J. H. Lippincott, Grand Recorder." This memorandum appears to have been written after Mr. Middleton's death.

It will be observed that Mr. Middleton did not comply with the regulations of the society by the affidavit above recited. He did not fill out the blank form on the back of the beneficiary certificate, authorizing the change, and attach his signature thereto. The affidavit is not even a substantial compliance. The blank form is, in terms, a revocation of the former direction, and an express authorization and direction to pay the benefit of the new appointee bearing relationship to the member to be stated. The affidavit does not declare a revocation of the former direction, nor does' it authorize and direct payment to Miss Gandy, except so far as the affiant declares that he desired the change in her favor.

It is claimed that all of the prescriptions of the mode in which a change of beneficiary should be accomplished are mere forms, the observance of which was waived. The rule in question is most carefully drawn, and is obviously not a mere form. The society consists of various subordinate lodges, located all over the country, at places distant from each other. Hundreds of persons are members of the order, and it is impossible for the officers of the grand lodge to be personally acquainted with each member of the subordinate lodges. It is, therefore, obviously necessary that there should be some means of certain identification, whereby the officers of the grand lodge may know that the party seeking to make the change is the member who holds the certificate to be affected by the change. For this reason the member desiring to change his beneficiary certificate is required to fill out the blank form on the back of his own beneficiary certificate, and to have his signature attested by the recorder of his local lodge, or by some competent civil officer. It is easy to see that, in the hundreds of cases which come before the general officers of the order, the observance of the

exact rule of changing beneficiaries, by which the certificate itself contains an endorsement of the change, may be of the greatest importance. If the change can be made by separate affidavit or letter, or by any mode other than that prescribed by the rules, endless confusion might ensue.

It is further claimed that Mr. Middleton is to be excused from observing the mode prescribed by the regulations of the society in changing his beneficiary, because, at the time he desired to make the change, he was so ill as to be unable to leave his chamber and attend at the meetings of his local lodge. The regulations of the society did not require that he should attend a meeting of the lodge in order to change his beneficiary. All he was required to do was to fill out the blank form on the back of his certificate and have his signature attested by the recorder, &c. This might have been done in his sick chamber.

It is further insisted that the acceptance of the surrender of the old certificate, and the issue of the new one in favor of Miss Gandy, was a waiver of performance of the prescribed mode of change by the society, and that no one else can question its action. The proof is that the acceptance of the surrender of the old certificate, and its cancellation, and the issue of the new one, was the inadvertent act of some of the officers of the grand lodge, who did not notice the defects of the attempted change. They endeavored to correct their mistake by their endorsement on the certificate to the effect that its cancellation was an error. Nothing in the case shows that these officers, perceiving the defects of Mr. Middleton's attempted change of beneficiary, considered the question of waiving observance of the regulations, and decided that they should, in this case, be waived. If they had done so, their action would have been invalid, because the standing regulations of the society expressly reserve the right to waive observance of the rules as to the mode of changing beneficiary to the option of the grand lodge itself. There is no attempt to show that the grand lodge acted in any way on this matter.

On the surrender of the original benefit certificate, a new one was issued by the order to Mr. Middleton, on December 30th, 1901, which designated Miss Gandy as the beneficiary. It is on

Grand Lodge A. O. U. W. of N. J. *v.* Gandy.

this certificate, inadvertently issued, in breach of the regulations of the order, that she bases her claim. After Mr. Middleton's death it appears to have been brought to the notice of the officers of the order that they had canceled the original certificate, and issued the new one, without Mr. Middleton having complied with the regulations of the society. The officers of the local lodge appear to have interested themselves in endeavoring to secure for Miss Gandy the $2,000 benefit, now come to be payable. The recorder of the local lodge drew up a letter, addressed to himself, dated February 22d, 1902, which he obtained to be signed by Mrs. George and Harry B. Middleton, children of Frank P. Middleton, the deceased member. The following is a copy of the letter, to which the recorder of the local lodge, being himself a notary public, appended the jurat:

"Camden, N. J., 2–22, 1902.
"*To G. Test, Recorder of Provident Lodge, No. 4, A. O. U. W. N. J.:*

"Dear Sir—In answer to your verbal communication and questions we would say that we, the undersigned, are the only children of Frank P. Middleton, deceased, who was a member of Provident Lodge, No. 4, A. O. U. W., when he died.

"He held a beneficiary certificate, No. 309, in said order, which was made payable to Lydia Gandy, for $2,000 and named 'a dependent' in said certificate, when he made the same payable to her, in consideration of said dependency and being a cousin of his, the said Frank P. Middleton, deceased, we heartily accord with his wishes and designation of the payment of said sum to her by your order, and hereby waive any and all claims we might otherwise have against such payment, as his children, or against such sum ($2,000) being paid to her by your order on account of his death. We will further state that we will endeavor to do all in our power, and of our own volition, without any influence whatever (in doing or saying this), on the part of any other person or persons, and will assist the said Lydia Gandy to obtain the said amount ($2,000) due to her which is just and rightly due her, as our father, Frank P. Middleton, intended, and on account of the services rendered and as our father desired. So we desire the same to be paid to her.

"Signed,
"Mrs. Mattie George,
"*Daughter.*
"Witness: Daniel H. Condit.

"Harry B. Middleton,
"*Son.*

"Sworn and 'scribed' before me, a notary public of the State of New Jersey, this twenty-second day of February, 1902, all alterations, additions and corrections were made before signing.
· "Golden Test,
"*Notary Public.*"

The uncontradicted proof is that, at the time this letter was obtained to be signed and sworn to by Mrs. George and Mr. Harry B. Middleton, they were unacquainted with the fact that they were, by the regulations of the society, themselves the beneficiaries entitled to be paid the benefit due on their father's death, in case Miss Gandy's nomination as beneficiary was, for any reason, ineffectual. It was represented to them that the letter and its verification were mere matters of form, and part of the process necessary and convenient to the payment of the money to Miss Gandy, in accordance with her unquestioned right. The transaction was wholly unsupported by the passing of any valuable consideration to the Middleton children. If considered as a gift to Miss Gandy, it was undoubtedly obtained to be executed by misleading statements made to the parties who signed the letter affidavit, and by the suppression of facts which ought to have been disclosed to them before they made such a gift.

It must be noted that this affidavit letter, which is claimed to have been a recognition of Miss Gandy's claim, was written after Mr. Middleton's death, and therefore at a time when, under the rules of the order, some definite person had become unchangeably entitled to the payment of the benefit. If Miss Gandy was entitled to it, she did not need to have her right assented to by the Middleton children. If they were entitled to it, they could not lawfully be deprived of that right by anything short of an actual assignment of their interest. Such an assignment must have been for some consideration of value, or, if by way of gift, they must have been informed of their rights, and knowingly have transferred them to Miss Gandy. Neither condition is shown in this affair. It is not pretended that any value passed, nor that there was any conscious gift. A gift by a donor who is ignorant of the fact that he is giving, cannot be sustained by any court.

Some correspondence between the executor of Mr. Middleton's will and Mrs. George was offered in evidence, indicating that the executor was desirous of obtaining Mrs. George to ratify and confirm the attempted designation of Miss Gandy as beneficiary. These letters were written after the death of Mr. Mid-

dleton, and after the right of the persons entitled to the benefit had been unchangeably fixed, unless altered by their own action. They were part of the effort to induce Mrs. George and Mr. Harry B. Middleton to recognize Miss Gandy's claim, and to execute such papers as might satisfy and protect the society in paying the fund to her. Nowhere in this cause is there any proof that, at the time of the doing of the acts by which the Middleton children are alleged to have ratified Miss Gandy's claim, there was any disclosure to them of the fact (well known to the persons who obtained the alleged ratifications) that, under the rules of the society, the Middleton children were themselves the beneficiaries, in case Miss Gandy's appointment was inefficient, and that, in securing the benefit to her, they would be depriving themselves of their rights, under the rules of the society.

As to the first point above discussed, it must be held that Mr. Middleton, by becoming a member of the society, accepted its regulations as the terms of his contract with the order. He agreed that his children should, if his wife predeceased him, become his beneficiaries, unless he changed them in the mode prescribed by the rules, or the grand lodge exercised its option and waived observance of that mode. He did not change his beneficiaries in the mode prescribed by the regulations, and the grand lodge did not waive the observance of that mode. It follows that his attempted change is nugatory, and that his children are entitled to the fund, under the provisions of paragraph 6 of the regulations.

If, however, it be assumed that all the requirements of the society's rules directing the mode of manifesting the member's purpose to change his beneficiary had been precisely observed by Mr. Middleton, it remains to consider the second objection to Miss Gandy's claim.

The regulation regarding the selection of beneficiaries is as follows:

"5. *Beneficiaries.*—Each member shall designate the person or persons to whom the benefit due at his death shall be paid, who shall in every instance be one or more members of his family, or some one related to him by blood, or who shall be dependent upon him, or be his affianced wife."

No member has any power to appoint a beneficiary outside of the classes fixed by the laws of the order. An attempt by a member to designate, as his beneficiary, a person who is not within the class prescribed by the regulations, must be treated as nugatory. *Britton..v. Royal Arcanum, 1 Dick. Ch. Rep. 105; affirmed on appeal, 2 Dick. Ch. Rep. 325.* In that case the limitation was ascribed to the definition of the objects of the corporation in the statute under which it was organized. In this case the society is a voluntary organization. Its declaration of objects and its constitution and regulations, however, constitute the contract of its constituent members. The provisions of these articles just as effectively define and limit the extent of the scheme as a statute limits the authority of a corporation organized under it.

This limitation on the power of the member to select the recipient of his benefit is one of the fundamental distinctions between a beneficial society and a general life insurance. A member of a beneficial society can appoint his benefit to be paid only to a person within the class named in the regulations of the order, but one insured in a life insurance company may direct his policy to be paid to anyone whom he may select. The beneficial society contract does not contemplate general insurance, nor do the safeguards which the law provides for such business apply to protect members of such societies. They do not have the equipment or capacity to conduct such business.

The payment of benefits to but a limited class is recognized as one of the expressly-declared objects of the society whose methods are now under examination. One object is stated to be

"to pledge the members to the payment of a stipulated sum to such beneficiary as a deceased member may have designated, *subject, however, to such restrictions and upon such conditions as the laws of the order may prescribe.*"

(See statement of objects, page 5, paragraph 6, of the constitution, &c.)

The laws of the order require that each member, in selecting his beneficiary, shall designate either a member of his family, some one related to him by blood, some one who is dependent

upon him, or his affianced wife. (See constitution, paragraph 5.) If the person designated by the member is not within any of these classes, it is not within the member's power effectually to appoint his benefit to be payable to him. Payment to such outside persons is not within the scheme for which the society was formed, nor within the society's agreement to pay benefits. The attempt to designate a person who is outside of these classes has no validity.

It is also true that the characteristics of some one of these classes must actually be possessed by the person designated. The member cannot falsely declare the person designated to be within the class, and thus impose upon the society the obligation to pay benefits outside of the plan upon which the society is founded. If he attempts to do this, his invalid appointment will be disregarded, and the benefit will be directed to be paid to that beneficiary to whom, under the regulations of the order, it would be due if there had been no designation. This was done in the case of *Britton* v. *Royal Arcanum, ubi supra.*

There is no pretence or claim in this case that Miss Gandy, whom Mr. Middleton has attempted to designate as his beneficiary in the place of his children, was a member of his family, or that she was related to him by blood, or that she was his affianced wife. No proof had been produced claiming that she occupied either of these relations to Mr. Middleton, nor has any argument been made in support of such a theory. The members of a man's family are his wife and children. The phrase certainly does not, as usually understood, include the servants who may be casually employed in his kitchen.

The class within which it is attempted to place Miss Gandy, in order to support her claim that she was rightfully designated to receive from this society, is that she was a dependent upon Mr. Middleton. In his affidavit he declares that "it is solely because of the dependency of the said Lydia Gandy that he desires the change, in her favor, of his benefit certificate." The undisputed evidence produced on this hearing shows that Miss Gandy was a cousin of Mr. Middleton's wife, and that she was not related to him by blood. She was in his employment as a

45

servant, doing his housework, under a contract with him for the payment of a certain weekly wage. She was engaged in this business for other persons before she came into Mr. Middleton's employment, and while she was employed by him she was regularly paid her stipulated wages. There is no proof that her contract with him was in any way of a permanent character; that he had undertaken any relation to her, by adoption or by contract, by which she became dependent upon him, nor that, in actual fact, without express engagement, she had consented to take the position of a dependent upon Mr. Middleton, and had been accepted as such by him. The proof is clear, by her own testimony, that her association with him was that of employer and employe, upon a perfectly-defined contract for the payment of a certain sum for household services to be rendered by her. This compensation was regularly paid to her.

Such a relation is not that of a dependent. On the contrary, it is probably the most independent of all ordinary relations. So much so that, in the usual conduct of such business, the independence of employes, under such contracts, is a common ground of complaint on the part of employers. Miss Gandy was no more dependent upon Mr. Middleton than every servant employed to do housework is dependent upon her employer. It is true that she was dependent upon his living for the continuance of their relations. A thousand employes in a factory would be dependent upon their employer in this sense. The regulations obviously mean, by requiring that the beneficiary should be dependent on the member, that the beneficiary should, by contract or association, be dependent on the member for support. An employe under a contract for household services on weekly wages, with no permanent relation whatever, cannot be held to be such a dependent.

A decree will be advised in favor of Mrs. George and Harry B. Middleton. They are entitled to the fund.