BOARD OF HEALTH OF THE STATE OF NEW JERSEY, RESPONDENT, v. SCHWARZ BROTHERS COMPANY, APPELLANT.

Argued February 19, 1913—Decided June 7, 1913.

1. The title of the Slaughter House act of 1910 (*Pamph. L., p.* 526) evinces an intent to legislate as to slaughter-houses, as to abattoirs, and as to places where animals are slaughtered for sale for human food; and to limit the legislation for each class to those within the state.

2. The Slaughter House act of 1910 (*Pamph. L., p.* 526) was intended to cover the whole subject of the licensing of slaughter-houses whether intended for horses or for horses and all other animals, and supersedes the act of 1899. *Comp. Stat., p.* 2677.

3. The licensing of slaughter-houses by state authority is within the police power of the states, and not an unconstitutional interference with interstate commerce.

On appeal from the First District Court of Jersey City.

Before Justices GARRISON, SWAYZE and MINTURN.

For the plaintiff, *Josiah Stryker* (*Edmund Wilson,* attorney-general, on the brief).

For the defendants-appellants, *George L. Record* (*Davis & Hastings,* on the brief).

The opinion of the court was delivered by

SWAYZE, J. The only questions raised are the construction and constitutionality of the Slaughter House act of 1910. *Pamph. L., p.* 526. It is admitted that the defendants slaughtered live horses at the establishment in Kearny, and had no license from the board of health. It is said that the act does not apply because the meat was intended only for export to Holland. It is not denied that the language of the statute by itself applies to the case, but it is argued that the title of the act is narrower than its body and evinces an intent to legislate only for the case where animals are slaugh-

tered for sale as food in this state, and is not applicable where they are intended for food in a foreign country. The full title is "An act providing for the licensing, regulation, conduct and operation of slaughter-houses, abattoirs or places where animals are slaughtered for sale for human food in the State of New Jersey, and providing penalties for the violation of the provisions of said act." The point made is that the words "in the State of New Jersey" are to be read only in connection with the words "places where animals are slaughtered for sale for human food," and not in connection with the words "slaughter-houses, abattoirs." The appellant's argument proves too much. If it is correct, the words "slaughter-houses and abattoirs" are unqualified and the title evinces an intent to regulate such establishments wherever located, whether within or without New Jersey.

We ought not to attribute an intention to the legislature to legislate or purport to legislate for places outside of our jurisdiction. The other construction is more natural. Three classes of places were meant to be included—*first,* slaughter-houses; *second,* abattoirs; *third,* places where animals are slaughtered for sale for human food; and the legislation for each class was limited to those within the state. We cannot believe any one could have been misled by the title.

The next point is that the regulation of buildings intended to be used for the slaughter of horses is covered by the act of 1899 (*Comp. Stat., p.* 2677) relating to that subject alone. It is obvious, however, that the act of 1910 was intended to cover the whole subject of the licensing of slaughter-houses, whether intended for horses or horses and all other animals, and it necessarily supersedes the earlier legislation.

It is next argued that the act is bad because it provides that the penalty for conducting a slaughter-house, abattoir or place where animals are slaughtered for sale for human food in violation of the Pure Food act of 1907, shall be $200; this, it is said, amounts to an amendment of the Pure Food act, and makes the act embrace more than one object, and one not expressed in the title. There is, however, no difficulty in eliminating this clause without impairing what remains. The

rest of the act suffices to cover the present case.  *Golden Star Fraternity* v. *Martin,* 30 *Vroom* 207.

The third point made is that the act interferes with interstate commerce.  We think not.  It is an exercise of the police power.  The licensing of slaughter-houses by state authority has long been recognized as coming within that power. *Slaughter-houses Cases,* 16 *Wall.* (*U. S.*) 36.  The object in this act is even more remote from commerce than the regulations sustained in *Kidd* v. *Pearson,* 128 *U. S.* 1; *Geer* v. *Connecticut,* 161 *Id.* 519; *Capital City Dairy Co.* v. *Ohio,* 183 *Id.* 238; *The Winnebago,* 205 *Id.* 354; *Silz* v. *Hesterberg,* 211 *Id.* 31; *Davis* v. *C., C., C. & St. L. Ry.,* 217 *Id.* 157; *Purity Extract Co.* v. *Lynch,* 226 *Id.* 192.  It is unnecessary to cite further authority.  The judgment is affirmed, with costs.