## THOMAS O'NEILL v. SUPREME COUNCIL, AMERICAN LEGION OF HONOR.

Submitted March 19, 1903—Decided February 23, 1904.

1. Where a contract embodies mutual and interdependent conditions and obligations, and one party either disables himself from performing, or prevents the other from performing, or repudiates in advance his obligations under the contract and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is not only excused from further performance on his part, but may, at his option, treat the contract as terminated for all purposes of performance, and maintain an action at once for the damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance by the defendant.

2. The doctrine of *Hochster* v. *De la Tour*, 2 *El. & B.* 678, approved.

3. Where a beneficial organization issues to one of its members a benefit certificate entitling the beneficiaries to a stated sum on the death of the member while in good standing, upon condition of his paying stipulated periodical assessments during life and complying with the by-laws of the organization, the member has such an interest in the enforcement of the benefit certificate as entitles him to maintain an action to recover damages for its repudiation.

4. Where such a benefit certificate is repudiated during the life of the member, he need not continue payment of assessments or otherwise preserve his good standing in the organization, in order to entitle himself to sue for damages. Repudiation absolves the injured party from further performance of conditions precedent on his part.

5. Where a benefit certificate is conditioned upon compliance by the member with all by-laws of the order thereafter to be enacted, the condition must be construed as referring only to reasonable by-laws and amendments, adopted in furtherance of the contract, and not to such as would overthrow it or materially alter its terms.

6. Where a beneficial organization attempts, by means of an unauthorized by-law, to make a material modification of a benefit certificate previously issued, the member, if he intends to treat such by-law as a repudiation of the contract, must exercise his option within a reasonable time. In ordinary cases, what is a reasonable time is a question for the jury.

7. An action brought for repudiation of a contract is not subject to a time limitation that arises solely out of the terms of the repudiated contract.

On demurrer to pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices HENDRICKSON and PITNEY.

For the plaintiff, *Clark McK. Whittemore.*

For the defendant, *W. Holt Apgar.*

The opinion of the court was delivered by

PITNEY, J. The declaration avers that in the year 1891 the defendant was a corporation of the State of Massachusetts, engaged in business in the State of New Jersey, and made a contract under seal with the plaintiff, known as a benefit certificate (set forth in full in the pleading), whereby it was certified that the plaintiff was a companion of the American Legion of Honor, and thereupon, in consideration of full compliance by him with all by-laws of the supreme council of that order then existing or thereafter adopted, and the conditions in the benefit certificate contained, the supreme council agreed to pay to the plaintiff's sister, in trust for his six children, the sum of $5,000, upon satisfactory proof of the plaintiff's death, while in good standing upon the books of the supreme council. It alleges that the contract was made in consideration of the payment by the plaintiff of the assessments or premiums which might from time to time be called by the defendant. It avers payment by the plaintiff of all assesments called, and performance by him of all conditions, until the defendant broke the contract and declared the same void. It sets up that the defendant has failed, neglected and refused to carry out the conditions of the contract, in that, on August 22d, 1900, on December 10th, 1901, and on divers other days-between those dates, the defendant declared to the plaintiff that it would not perform the contract or pay the insurance money thereby agreed to be paid, and that upon the plaintiff's death the beneficiaries would not be entitled to receive the sum of

$5,000, and that the defendant would not pay the same, but that the beneficiaries should receive only $2,000. The declaration further avers that upon the breach of the contract by the defendant as aforesaid, and upon the several dates mentioned above, the plaintiff tendered to the defendant the same monthly assessments and payments as had been theretofore called or required by the defendant upon the contract, and the plaintiff offered and agreed to continue making such payments, and in all respects offered to comply with the terms and conditions of the contract, yet the defendant refused to accept from the plaintiff the assessments so tendered, and refused to recognize the contract or continue it in force, whereby the plaintiff has sustained damages, to recover which the action is brought.

The defendant has pleaded the general issue and five special pleas. To each of the latter the plaintiff demurs. The first question for consideration is whether the declaration sets forth a good cause of action. The cause of action asserted is not the right to recover the sum named in the benefit certificate according to its terms, but to recover damages for a renunciation of the agreement by the party bound in advance of the time set for performance.

Numerous reported decisions have laid down the doctrine that where a contract embodies mutual and interdependent conditions and obligations, and one party either disables himself from performing, or prevents the other from performing, or repudiates in advance his obligations under the contract and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is not only excused from further performance on his part, but may, at his option, treat the contract as terminated for all purposes of performance, and maintain an action at once for the damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance by the defendant. This doctrine has been followed in the English courts for more than a half century. *Hochster* v. *De la Tour* (1853), 2 *El. & B.* 678; 22 *L. J., Q. B.* 455; 17

*Jur.* 972; 6 *Eng. Rul. Cas.* 576; *Cort* v. *Ambergate, &c., Railway Co.* (1851), 17 *Ad. & E.* (*N. S.*), *Q. B.* 127; 20 *L. J., Q. B.* 460; 15 *Jur.* 877; *Avery* v. *Bowden* (1855), 5 *El. & B.* 714; 6 *Id.* 953; *Danube, &c., Railway Co.* v. *Xenos* (1861), 11 *Com. B.* (*N. S.*) 152; 31 *L. J., C. P.* 84; 5 *L. T.* 527; affirmed on appeal in Exchequer Chamber, 13 *Com. B.* (*N. S.*) 825; 31 *L. J., C. P.* 284; 8 *Jur.* (*N. S.*) 439; *Frost* v. *Knight* (1872), *L. R.,* 7 *Ex.* 111; 41 *Id.* 78; 26 *L. T.* 77; *Johnstone* v. *Milling* (1886), *L. R.,* 16 *Q. B. Div.* 460; 55 *L. J., Q. B.* 162; 54 *L. T.* 629; *Synge* v. *Synge* (1894), 1 *Q. B.* 466; 63 *L. J., Q. B.* 202; 70 *L. T.* 221.

In the leading case of *Hochster* v. *De la Tour,* Justice Crompton said, during the argument: "When a party announces his intention not to fulfill the contract, the other side may take him at his word and rescind the contract. That word 'rescind' implies that both parties have agreed that the contract shall be at an end as if it had never been. But I am inclined to think that the party may also say: 'Since you have announced that you will not go on with the contract, I will consent that it shall be at an end from this time (meaning, of course, for purposes of further performance) ; but I will hold you liable for the damage I have sustained; and I will proceed to make that damage as little as possible by making the best use I can of my liberty.' This is the principle of those cases in which there has been a discussion as to the measure of damages to which a servant is entitled on a wrongful dismissal."

And Lord Campbell, Chief Justice, in delivering judgment, said: "It seems strange that the defendant, after renouncing the contract and absolutely declaring that he will never act under it, should be permitted to object that faith is given to his assertion and that an opportunity is not left to him of changing his mind. * * * The man who wrongfully renounces a contract into which he has deliberately entered, cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured; and

it seems reasonable to allow an option to the injured party, either to sue immediately or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party and cannot be prejudicial to the wrong-doer."

The same rule prevails in the Supreme Court of the United States (*Roehm* v. *Horst* (1899), 178 *U. S.* 1), where numerous previous decisions of the same court are cited. And the great weight of authority in the state courts is to the same effect. *Burlis* v. *Thompson*, 42 *N. Y.* 246; *Howard* v. *Daly*, 61 *Id.* 362, 374; *Ferris* v. *Spooner*, 102 *Id.* 10; *Windmuller* v. *Pope*, 107 *Id.* 674; *Nichols* v. *Scranton Steel Co.*, 137 *Id.* 471, 487; *Kadish* v. *Young*, 108 *Ill.* 170, 177; *Roebling's Sons Co.* v. *Lock Slitch Fence Co.*, 130 *Id.* 660; 22 *N. E. Rep.* 518; *Lake Shore, &c., Railway Co.* v. *Richards*, 152 *Ill.* 59; 38 *N. E. Rep.* 773; *Kurtz* v. *Frank*, 76 *Ind.* 594; *Crabtree* v. *Messersmith*, 19 *Iowa* 179; *McCormick* v. *Basal*, 46 *Id.* 235; *Hosmer* v. *Wilson*, 7 *Mich.* 294, 304; *Platt* v. *Brand*, 26 *Id.* 173; *Hocking* v. *Hamilton*, 158 *Pa. St.* 107; *Davis* v. *School Furniture Co.*, 41 *W. Va.* 717; *Remy* v. *Olds*, 88 *Cal.* 537; *Sullivan* v. *McMillan*, 26 *Fla.* 543, 557; *Thompson* v. *Kyle*, 39 *Id.* 582, 599; *Fox* v. *Kitton*, 19 *Ill.* 519, 534; *Follansbee* v. *Adams*, 86 *Id.* 13; *Adams* v. *Byerly*, 123 *Ind.* 368; *Kalkhoff* v. *Nelson*, 60 *Minn.* 284; *Bignall* v. *Manufacturing Co.*, 59 *Mo. App.* 673, 682; *Manufacturing Company* v. *McCord*, 65 *Id.* 507; *Burke* v. *Shaver*, 92 *Va.* 345; *Lee* v. *Mutual Life Association*, 97 *Id.* 160.

The doctrine of Hochster *v.* De la Tour is generally recognized by the text-writers as established law.  7 *Am. & Eng. Encycl. L.* (2d ed.), tit. *"Contracts,"* 150; *Bish. Con.*, § 1428; 2 *Chit. Con.* (11th Am. ed.) 1067, 1079; 2 *Pars. Con.* (8th ed.) 781 (*667); 52 *L. R. A.* 248; *Benj. Sales* (*Corbin ed.*), §§ 859, 860.

So far as observed, the only states dissenting from the doctrine are Massachusetts, Nebraska and North Dakota *Daniels* v. *Newton*, 114 *Mass.* 530; 19 *Am. Rep.* 384; *Car-*

*stens* v. *McDonald,* 38 *Neb.* 858; *King* v. *Waterman,* 55 *Id.* 324; *Stanford* v. *McGill,* 6 *N. Dak.* 536. The latter decision is based partly, and the Nebraska decisions principally, upon the authority of Daniels *v.* Newton, which is the leading case upon this side of the question. It is there held that a mere refusal of performance by the promisor, before the time for performance arrives, cannot form a ground of damages. But in *Parker* v. *Russell,* 133 *Mass.* 74, it was held that a refusal of performance of a substantial part of the contract, after the time for entering upon performance has begun, entitles the injured party to treat the entire contract as absolutely broken, and to recover immediately his damages, based upon the whole value of the contract, including compensation for non-performance in the future as well as in the past. In *Ballou* v. *Billings,* 136 *Id.* 307, it was held that for purposes of rescission by the promisee notice that the promisor will not perform has the same effect as an actual breach. These and other cases show that even in Massachusetts the reasoning on which the decision in Daniels *v.* Newton was based is hardly carried to its logical conclusion. *Jewett* v. *Brooks,* 134 *Mass.* 505; *Lowe* v. *Harwood,* 139 *Id.* 133; *Paige* v. *Barrett,* 151 *Id.* 67; *Whitten* v. *New England, &c., Company,* 165 *Id.* 343. Upon the precise point now presented, however, the authority of Daniels *v.* Newton is still recognized in Massachusetts, as appears from a recent decision in a case that is "on all fours" with the one now before us. *Porter* v. *American Legion of Honor* (1903), 67 *N. E. Rep.* 238.

The general question of repudiation of contracts is ably discussed by Professor Williston, in 14 *Harv. L. Rev.* 317, 421, with an ample citation of cases. He combats the doctrine of Hochster *v.* De la Tour, while conceding that it is sustained by the great weight of authority.

There seems to be no controlling decision in our own state, at least no reported case that is precisely in point.

In *Parker* v. *Pettit,* 14 *Vroom* 512, which was an action brought by the purchaser to recover damages for refusal to deliver goods purchased, the vendor, prior to the time of

performance, had declared his intention not to perform, and had likewise disabled himself from performing by selling the goods to another. This court held that thereby the vendor had dispensed with the performance of conditions precedent by the purchaser, and that neither a demand of performance nor a tender of the consideration money' was necessary. It was intimated by Mr. Justice Depue in the opinion that the defendant's refusal of performance before the time for performance arrived did not, of itself, amount to a breach of the contract so as to authorize a suit before the time for performance; but this was *obiter dictum,* for the suit was in fact brought after that time.

In *Vickers* v. *Electrozone Commercial Co.,* 38 *Vroom* 665, Judge Vredenburgh, speaking for the Court of Errors and Appeals, declared (at *p.* 671) that "a party injured by the repudiation of a contract by the other party also bound by it, has an election of remedies he may pursue, one of which is that he may treat the repudiation as putting an end to the contract for all purposes of performance and sue for the profits he would have realized if he had not been prevented from performing, and the contract would be continued in force for that purpose." It must be conceded that the adoption of this rule was not necessary for the decision of the case, which was an action to recover damages for the past breach of a single covenant and was not based upon a repudiation of the entire agreement. But as a pronouncement by our court of last resort, agreeing, as it does, with the English and most of the American decisions, the expression quoted is entitled to great weight in this court.

Upon the whole we are satisfied that the doctrine of Hochster *v.* De la Tour is well founded in principle as well as supported by authority. We are also clear that it applies to such a contract as the one in suit; and that the declaration sets forth a renunciation so clear and unequivocal as to give ground for an action, it being averred that the defendant has declared to the plaintiff that it will not perform the contract and has refused to accept the monthly assessments

tendered by the plaintiff in performance of conditions precedent on his part.

But it is further objected that the plaintiff has no interest in the benefit certificate of such a character as to entitle him to maintain an action for damages by reason of its renunciation. It is urged that under such a certificate the member acquires no property in the benefit but only a power to designate the beneficiary. A declaration to this effect is contained in the opinion of Mr. Justice Magie (now Chancellor) in *Golden Star Fraternity* v. *Martin,* 30 *Vroom* 215, where the following authorities are cited to support it, viz.: *Bac. Ben. Soc.,* § 237; *Nibl. Mut. Ben. Soc.,* § 201 *et seq.; Barton* v. *Provident Mutual Association,* 63 *N. H.* 535; *Hellenberg* v. *District No.* 1, 94 *N. Y.* 580. In the case in 30 *Vroom* it was held that the member had no such interest in the money that was payable upon her decease as to make that money assets of her estate, and payable to her administrator in the event of her death without designating a beneficiary. Such, also, in substance was the decision in the Hellenberg case. So, in *Fink* v. *Fink,* 64 *N. E. Rep.* 506, it was held that a member of a benefit association could not dispose by will of the right to receive the death benefit, because he had no property interest therein, but only a power of appointment.

But it seems obvious that this power of appointment—the *jus disponendi*—incidental to the *status* of membership in such an association, is a valuable property right, for the wrongful deprivation of which an action may be maintained. Ordinarily there exists, by the rules of such an association, the power on the part of the member to change the beneficiary from time to time. Defendant's argument concedes the existence of that privilege in the present case, but as it does not appear from the averments of the declaration it should be disregarded in the present discussion, which touches upon the sufficiency of that pleading. However, laying aside the privilege of changing the beneficiaries, the plaintiff's benefit certificate of itself shows that by preserving his good standing

as a member of the order, by complying with its laws, and by the payment of stipulated periodical assessments during his life, he would entitle his children at his death to receive $5,000 at the hands of the defendant.   To say that this was the contract between the parties, and at the same time to say that the plaintiff has no pecuniary interest in its enforcement, seems to us quite inadmissible.   The contract was contrived for the very purpose of enabling the plaintiff to dispose of the fruits of his industry for the ultimate benefit of those near and dear to him.   The right to change the beneficiary is not the essential thing; it is the right to endow the stated beneficiary that is valuable.   The life of such a contract depends upon the continued performance of conditions precedent by the member.   Every new assessment paid, every new act done to preserve his good standing in the order, has the effect of renewing the life of the contract as truly as if there were a new appointment of beneficiaries.   In this aspect the contract has to the member a value of the same character as any other investment made for the ultimate benefit of his children.

That the decision in Golden Star Fraternity v. Martin was not intended to negative this proposition is clear from the fact that the opinion cites *Bac. Ben. Soc.,* § 237, where the text-writer, after stating that "the member of the society as such has, under this contract, no interest nor property in this benefit, but simply the power to appoint some one to receive it," and after some discussion of the authorities, including the case of Hellenberg v. District No. 1, already cited, proceeds to say: "The cases must not, however, be understood to hold that the member of a benefit society has not a property right in the contract of membership, under which he has the power to designate a recipient of the benefit to be paid because of such membership and under the contract.   The right of the member in this contract is a valuable one, which the courts will at all times recognize and protect, although, strictly speaking, such member has no property interest in the benefit paid or subject of the power.   The

membership, which includes the right to pay the agreed consideration and to appoint a person to take the benefit, must be regarded as a species of property, and is to be distinguished from the benefit or sum to be paid itself, in which the member has no property."

Two recent decisions are cited to us as authority for the contention that such an action as the present cannot be maintained against a benefit society by one of its members. They are *Langan* v. *Supreme Council (N. Y.),* 66 *N. E. Rep.* 932, and *Porter* v. *American Legion of Honor (Mass.),* 67 *Id.* 238. The latter case follows Daniels *v.* Newton in treating the renunciation of a contract, before arrival of the time for performance, as inefficacious, and therefore as conferring no present right of action. In the Langan case, the New York Court of Appeals, without overruling or even questioning the authority of the former decisions of the same court (already cited) that sustain the doctrine of Hochster *v.* De la Tour, nevertheless refused to entertain an action at law brought by a member against a benefit society to recover damages for the repudiation of a benefit certificate. The denial of the legal remedy was placed—*first,* upon the ground that the defendant could not, by repudiation, terminate its liability under the benefit certificate, the answer to which is that under the doctrine referred to such repudiation does give rise to a present liability, *at the option of the party injured;* but, *secondly,* the decision was based on the ground that the plaintiff could by an equitable action require the defendant to recognize the contract as in force. It is needless to say that under our system of jurisprudence the latter ground is untenable. We frequently deny equitable relief where an adequate remedy exists at law, but where a suitor has a legal cause of action we do not turn him out of the courts of law on the ground that he may be able to obtain adequate relief in equity.

It is worthy of note, however, that in the Langan case there is express recognition of the member's right to maintain an action with respect to an attempted breach of the

benefit certificate, and in the Porter case there is tacit recognition of the same interest on the part of the member.

Having concluded, therefore, that the present declaration sets forth a good cause of action, we proceed to consider the several pleas to which the plaintiff has demurred.

The second plea sets up that the death of the plaintiff is a condition precedent to an action upon the benefit certificate, and that the plaintiff is still living. But, as already remarked, the cause of action asserted is not the right to recover the sum named in the benefit certificate according to its terms, but to recover damages for a repudiation of the agreement in advance of the time set for performance. Such repudiation having taken place, it follows, upon the principles already discussed, that the further performance of conditions precedent by the plaintiff is waived, and the action may be brought without awaiting the maturity of the contract.

The third plea sets up that the benefit certificate was made in consideration of the full compliance by the plaintiff with all by-laws of the order then existing or thereafter to be adopted, and avers that on August 22d, 1900, an amendment of the by-laws was made that went into effect on the 1st of October, declaring that $2,000 should be the highest amount paid on the death of a member upon any benefit certificate theretofore or thereafter issued; wherefore the plaintiff is bound by the reduction of the benefit from $5,000 to $2,000, and has no cause of action by reason of such reduction. But it is very generally, if not universally, held that these benefit certificates, like other contracts, confer a vested interest upon the member which may not be impaired by a subsequent amendment, even though the power to amend be reserved in general terms. If the member's stipulation to comply with all by-laws thereafter enacted could be construed to relate to a by-law that reduced the benefit from $5,000 to $2,000, it must also relate to a by-law canceling the benefit certificate entirely, a result wholly unjust and absurd. This stipulation must be construed as referring only to reasonable by-laws and amendments adopted in furtherance of the contract, and

not to such as would overthrow it or materially alter its terms. *Kent* v. *Quicksilver Mining Co.,* 78 *N. Y.* 159; *Parish* v. *New York Produce Exchange,* 169 *Id.* 34; 61 *N. E. Rep.* 977; *Weber* v. *Supreme Tent,* 172 *N. Y.* 490; 65 *N. E. Rep.* 258; *Langan* v. *American Legion of Honor,* 66 *Id.* 932; *Newhall* v. *Supreme Council,* 181 *Mass.* 111; 63 *N. E. Rep.* 1. In the Langan and Newhall cases the actions were brought against the same organization that is defendant in the present case, and the same amendment (of August, 1900) that is set up in the third plea was in each case adjudged inefficacious as a modification of benefit certificates previously issued.

The fourth plea sets up the same amendment of the by-laws and avers that, on and after October 1st, 1900, when the amendment took effect, the plaintiff was required to pay a monthly assessment of $5.04 instead of his former assessment of $12.60, which reduction was on account of the reduction of the benefit from $5,000 to $2,000, and that thereupon the plaintiff, from that time forward until the 1st of September, 1901, paid to the defendant the monthly assessment of $5.04, and the plea avers that this was an acceptance on his part of the reduction of the benefit, and that he is now estopped from claiming that he has been wronged. But this plea does not deny, and failing to deny must be taken to confess, the averment of the declaration that during the same period the plaintiff repeatedly, if not monthly, tendered to the defendant the amount of the former assessment and that such tender was refused. The payment of so much as the defendant would accept, accompanied by a tender of the larger sum that the plaintiff deemed to be due, does not, of itself, alone constitute an acceptance of the amended by-law. Nor is the plaintiff estopped, for the defendant, so far as appears, did not in anywise change its position in reliance upon the plaintiff's conduct. It is true that, in such a situation as is here presented, the promisee, if he intends to treat the contract as terminated, must exercise his option to do so within some reasonable time. But from the averments of this plea alone we cannot say, as matter of law, that the plaintiff has

waited an unreasonable time and thereby has waived his action for repudiation.

The fifth plea avers that under the amended by-law the plaintiff was required to pay, on August 31st, 1901, an assessment of $5.04, and that he failed to pay it, and has not since paid that assessment or any other assessment due from that date until the commencement of this suit, so that he is no longer in good standing in the order. But as the defaults thus charged against the plaintiff occurred after the repudiation of the agreement by the defendant the plea furnishes no answer to the declaration. As already remarked, repudiation absolves the injured party from further performance of conditions precedent on his part. *Parker* v. *Pettit,* 14 *Vroom* 512, and the other cases cited above. The adoption of the amended by-law, reducing the benefit from $5,000 to $2,000, and the refusal thereafter of the plaintiff's tender of his dues and assessments, rendered it no longer necessary for him to continue payment of assessments or to keep himself in good standing in the order.

The sixth plea sets up that among the laws governing the order at the time of the issuance of the benefit certificate in question was a by-law that provided that "no action at law or in equity shall be brought or maintained on any cause or claim arising out of any membership or benefit certificate, unless brought within one year from the time such action accrues; that such right of action shall accrue ninety days after all proofs called for in case of death of a member shall have been furnished; and that in cases where no proof of death has been furnished as required within twelve months after death, all claims shall be regarded as abandoned and no proof shall thereafter be received or any claim made thereon." The plea further avers that the plaintiff's cause of action accrued on August 20th, 1900, when the amended by-law was passed, and that the action was not brought within one year after October 1st, 1900, at which time that by-law became effective. We deem it plain that, by a proper construction, the by-law quoted in this plea relates only to claims based

upon the death of a member. The present action does not arise out of the benefit certificate within the meaning of that limitation; it is brought to recover damages for the unlawful abrogation of the benefit certificate by the defendant. When the defendant, on its part, broke the contract, it absolved the plaintiff from the obligation thereof and the action to recover damages for such abrogation is not subject to any limitation that arises solely out of the terms of the contract that has been abrogated.

For these reasons we are of the opinion that all the pleas referred to are bad in substance and that the demurrers should be sustained.

The case having been submitted on printed briefs and without oral argument, we have deemed it proper to decide the questions that were discussed in the briefs (especially as they go to the substantial merits of the controversy) rather than to base our decision upon any ground not thus discussed.

It is not out of place to remark, however, that had we reached a different conclusion upon the questions above dealt with, the demurrers would properly have been sustained for another reason, not mentioned by counsel. The declaration, besides a special count setting up the cause of action already referred to, contains in a separate count the usual combination of the common money counts in *assumpsit*. Each of the pleas demurred to professes to answer the entire declaration and not alone the special count. Unless, therefore, they set up matters that furnish a defence to the entire declaration they are bad in substance. 1 *Chit. Pl.* (*13th Am. ed.*) 553, 554; *Conover* v. *Tindall, Spenc.* 513; *Brehen* v. *O'Donnell,* 5 *Vroom* 408; *Flemming* v. *Hoboken,* 11 *Id.* 270; *Grafflin* v. *Jackson, Id.* 440. As none of the special pleas furnishes any defence to the common money counts, they could not be sustained even though they had constituted a sufficient answer to the special count.

The plaintiff is entitled to judgment.