13238

HAMPTON v. SUPREME LODGE KNIGHTS OF PYTHIAS, ETC.

(159 S. E., 923)

*Mr. N. J. Frederick,* for appellant,

*Mrs. S. Evelyn Lester,* for respondent,

542

September 4, 1931.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE.

Appeal from the County Court of Richland County.

The parties will be referred to as they appeared in the lower Court.

Plaintiff charged in her complaint, in substance, that at the time stated therein she was a member in good standing of Pride of Columbia, No. 55, Courts of Calanthe, a subordinate lodge or branch of the Supreme Lodge Knights of Pythias, a fraternal organization under the laws of South Carolina, authorized to issue policies of life insurance on its members; that the subordinate lodge referred to also issued like policies of insurance and was under the direct supervision of the Supreme Lodge and auxiliary to it; that as a member in good standing of this fraternal organization she held an insurance policy on her life payable to her estate in the sum of $200, and, in addition, was entitled by reason of her membership therein to certain sick benefits and other benefits flowing from such membership; that on September 3, 1928, the Grand Lodge Courts of Calanthe, acting under the supervision and direction of the Knights of Pythias, "without just cause or excuse, negligently, recklessly, willfully and wantonly" suspended the local lodge in which she held membership; that at the time of such suspension she had paid all dues owed by her and was, since such suspension, ready and willing to pay any dues and assessments that might be called for; that by reason of the suspension of the local lodge she lost her policy of insurance and the other benefits accruing from her membership, by reason of which she claimed to be injured and damaged in the sum of $3,000.

The answer of defendant set up three defenses: (1) A general denial; (2) that the subordinate lodge of which

plaintiff was a member was duly suspended for failure to obey the rules and regulations of the order, and further that plaintiff could have saved herself from injury or loss by compliance with its rules and regulations governing the rights of a member upon suspension of a subordinate lodge; and (3) another action pending. (The third defense was abandoned at the trial.)

The case was heard by his Honor, M. S. Whaley, and a jury, resulting in a verdict for plaintiff against both defendants in the sum of $300 actual damages and $300 punitive damages. From the judgment entered thereon comes this appeal.

There are seven exceptions, but they do not raise for determination so many questions. We shall cover them in a general discussion of the points presented.

Defendants contended in the trial Court that the action was one *ex contractu* based on the loss of an insurance policy, and that as no fraud was shown plaintiff. could not recover punitive damages; and, further, that even if the action were one in tort no punitive damages were recoverable as no willfulness was proven.

The complaint clearly alleged an action sounding in tort. It was an action on the case for damages caused by an alleged illegal and willful interference with and disturbance of plaintiff's property rights. Any contractual relation existing was purely incidental to the cause of action sued on.

"Wherever a man does an act which in law and in fact is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce injury to another, and which in the particular case does produce such an injury, an action on the case will lie." *Angle v. Chicago, St. P., M. & O. R. R. Co.*, 151 U. S., 1, 14 S. Ct., 240, 245, 38 L. Ed., 55.

In this state we have the case of *Hubbard v. Woodmen of the World*, 125 S. C., 154, 118 S. E., 418, in many respects quite analogous to the present action. There, plaintiff

brought his action for damages against the Woodmen of the World for alleged fraudulent breach of contract growing out of an alleged wrongful repudiation and cancellation by that society of his certificate or contract of insurance, arising from the suspension of the local camp in which he held membership. Recovery, however, was denied on the ground that he was not in good standing in the order at the date of the alleged repudiation of his contract.

This Court, however, speaking through Mr. Justice Marion, expressly recognized the right of plaintiff therein to bring his action in tort for damages, citing as a basis therefor the case of *O'Neill v. Supreme Council,* 70 N. J. Law, 410, 57 A., 463, 464, 1 Ann. Cas., 432, from which the following was quoted: "Where a contract embodies mutual and interdependent conditions and obligations, and one party either disables himself from performing, or prevents the other from performing, or repudiates in advance his obligations under the contract, and refuses to be longer bound thereby, communicating such repudiation to the other party, the later party is not only excused from further performance on his part, but may at his option treat the contract as terminated for all purposes of performance, and maintain an action at once for damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance by the defendant."

The *O'Neill case,* in addition, defined the ownership of a beneficial certificate or contract of insurance as a valuable property right; Mr. Justice Pitney, author of the opinion, saying: "But it seems obvious that this power of appointment—the *jus disponendi*—incidental to the status of memship in such an association, is a valuable property right, for the wrongful deprivation of which an action may be maintained." See also, *Golden Star Lodge No. 1 v. Watterson,* 158 Mich., 696, 123 N. W., 610, 133 Am. St. Rep., 404.

The evidence in this cause tended to show an illegal sus-·pension of the local lodge and a wanton interference with

plaintiff's property rights, namely, her insurance contract and the other benefits accruing to her as a member thereof. There was no error in construing the action as one in tort and in submitting the issues of willfulness to the jury.

With reference to defendant's motion for a directed verdict, generally, it is our opinion that the issues of alleged illegal suspension of the local lodge, of proper notice to the subordinate lodge, as required by the rules, of proper trial in accordance with the rules, and of waiver of the requirements of the rules by the local lodge, were all properly submitted to the jury. Upon disputed facts these questions were decided adversely to defendant's contentions. As there was testimony tending to support the verdict, we cannot interfere.

Appellants urged below and argue here that it was the duty of plaintiff, as a member of a fraternal organization, to exhaust her remedies within the order before invoking the civil courts. This question is one on which the Courts of the several states are not in harmony. We have found no decision in South Carolina directly in point.

The general rules, with numerous decisions, on this proposition are fully set forth in *Corpus Juris* under the article therein entitled "Beneficial Associations" from which we quote the following: "If the society confines itself to the powers vested in it and acts in good faith, under by-laws not violating the laws of the land *or any pecuniary or property rights* of the member, the general rule is that the Courts have no authority to interfere with the society by directing or controlling it as to questions of internal policy, nor to decide questions relating to doctrine, but will leave the society free to carry out any lawful purpose in accordance with its rules and regulations." (Emphasis ours.) 7 C. J., 1116.

"However, the Courts will intervene in order to see that the association confines itself to the powers vested in it, that it administers its rules fairly and honestly and in good

faith, and that its action does not violate the law of the land *or any pecuniary or property rights of the members.*" (Emphasis ours.) 7 C. J., 1117.

"While beneficial associations may require members to resort to tribunals within the order for the settlement of controversies and may exhaust such remedies before proceeding at law, they may not, directly or indirectly, wholly deprive members of the right to invoke the aid of the Courts. Again, it has been held that, where property rights are involved, a member of a beneficial association may appeal to the Courts without first appealing to the tribunals within the order, unless such a course is expressly prohibited by the Constitution of the association. * * * The rule does not apply where the society itself has violated its own regulations, so as arbitrarily to invade the rights of the members, as where it has failed to notify the aggrieved member of the proceeding affecting his rights." 7 C. J., 1122.

It has been pointed out, also, that a member of a fraternal organization occupies a double relationship to the society.

"As a member, he is bound by the rules and proceedings of the order, regularly taken, but as a holder of one of the policies, he stands, and under his policy the relationship, in most respects, is that of insurer and insured and subject to the principles ordinarily prevailing in that class of contracts." *Robinson v. Brotherhood of Locomotive Firemen & Engineers,* 170 N. C., 545, 87 S. E., 537, 539.

It is unnecessary, however, in our opinion, at this time further to discuss and to determine this question. The complaint herein charged and the jury found that the local lodge had been suspended without proper and legal notice or hearing, in violation of the rules and regulations of the order, as the result of which plaintiff's rights had been arbitrarily invaded and her pecuniary and property rights affected. In such a situation it was un-

necessary for her to exhaust her remedies within the order. She had the right in such circumstances to invoke without further delay the protection of a civil tribunal. See *Hall v. Supreme Lodge Knights of Honor* (D. C.), 24 F., 450.

In the instant case, the trial Judge refused to hold as a matter of law that the rules of the order on this point required plaintiff to exhaust her remedies by appeal within the order. He read these rules to the jury, leaving it for them to say "whether or not the plaintiff, through her Court, of which she was a member, lived up to her duties."

The proper practice required, of course, that the trial Court construe the written rules in evidence and charge the jury accordingly. In our opinion, however, his failure so to do was not prejudicial in the light of the views herein expressed.

The construction by the Court of the constitution respecting the duties of a member upon suspension of a local lodge was correct. This article of the constitution provided that upon suspension of a lodge or court a member in good standing might obtain a withdrawal card upon the payment of $2.00, but that such withdrawal would not be valid for more than six months. The trial Court ruled that such provision applied only to a legal suspension. It said: "Those rules are put in where proper suspension can take place in order to save the rights of those members who would otherwise be hurt by that suspension. It is not put in where an illegal or willful act is done. A party can stand on that and does not necessarily have to pay $2.00 for that reason. If a party would come into Court and claim there is an illegal suspension and yet go ahead and apply for withdrawal and pay $2.00 that could be used against that party as waiver namely, would waive the right to come into Court claiming that there was illegal suspension, or an illegal act was done."

Undoubtedly, plaintiff could stand on her legal rights and take the risk as to the final determination of the legality of the suspension.

The charge on the measure of damages was substantially correct. The jury was expressly instructed against finding damages in the nature of speculation or guess work. It is difficult in cases of this kind to measure accurately the exact amount of damages sustained, but that fact alone should not deprive plaintiff of her right to damages. There was for consideration by the jury in determining the amount of actual damages a number of elements, such as the value of the policy lost, the sick benefits lost, the loss of future help by her sisters in the Court, the loss of their companionship, love, care, and protection.

"There are cases * * * in which the question of an intentional wrong is involved. In such cases the degree of proof necessary is much relaxed in favor of the injured party. Where the wrongdoer creates the situation that makes proof of the exact amount of damages difficult, he must realize that in such cases 'juries are allowed to act upon probable and inferential as well as direct and positive proof.'" *Wood v. Pender-Doxey Grocery Co.,* 151 Va., 706, 144 S. E., 635, 638. See, also, *Chesapeake & Potomac Tel. Co. v. Carless,* 127 Va., 5, 102 S. E., 569, 23 A. L. R., 943.

Finally, the charge that the trial Judge erred in expressing his opinion on the testimony during the trial of the case and was hostile to defendant must be dismissed as without merit.

All exceptions have been considered and are overruled.

Judgment affirmed.

Mr. Chief Justice Blease and Messrs. Justices Cothran, Stabler and Carter concur.