THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Supreme Court

 
 
 
Myrtle Beach Shrine Club and Omar Shriners, Appellants,
v.
Horry Shrine Club, Respondent.
 
 
 

Appeal from Horry County
John L. Breeden, Circuit Court Judge

Memorandum Opinion No. 2006-MO-020
Heard April 6, 2006  Filed May 8, 2006 

AFFIRMED

 
 
 
J. Rene Josey, of Turner, Padget, Graham & Laney, P.A., of Florence, for appellants.
Howell V. Bellamy, Jr. and Mary Anna Neill, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach, for respondent.
 
 
 

 JUSTICE MOORE:  Appellants Myrtle Beach Shrine Club (Myrtle Beach Club) and Omar Shriners (hereinafter Omar Temple) commenced this declaratory judgment action seeking two declarations: that respondent Horry Shrine Club, Inc. (Horry Club) is subordinate to the jurisdiction and control of the Omar Temple, and that a 1993 lease agreement between Myrtle Beach Club and Horry Club is effective and binding.  On motions for summary judgment, the trial judge granted judgment to Horry Club.  We affirm.
FACTS
Horry Club was originally incorporated in 1951 as an eleemosynary corporation.  The clubs current bylaws require that all prospective Horry Club members be members of Omar Temple and Myrtle Beach Club.[1]  There is nothing in the bylaws, however, indicating Horry Clubs intent to be governed by Myrtle Beach Club or Omar Temple, or the national Shriners organization.  
Horry Club owns property in Myrtle Beach.  In March 1991, Horry Club and Myrtle Beach Club executed a lease agreement for this property to be leased by Myrtle Beach Club at a rental rate of $500 per year.  Myrtle Beach Club used the building on the property to hold meetings.  This lease was to expire at the end of 1999.  
In August 1993, Horry Club voted to extend the lease.  A new lease was executed for a forty-year term to expire in 2033.  This lease, which was signed October 1, 1993, provided for the same rent of $500 payable on the anniversary of the lease.  The lease includes a default clause for the failure to pay rent.  It was signed by Tommy Newton as president of Myrtle Beach Club.  In his affidavit submitted with Horry Clubs motion for summary judgment, Newton states:

I did not receive permission from the Omar Temple or the National Shrine to execute the [1993] lease agreement.  [Myrtle Beach Club] was later informed by the Omar Temple that the lease was illegal because it was for a term greater than one year[2] and we did not get approval from Omar Temple to execute the lease.

The parties subsequently signed a new lease agreement for a term from January 1 to December 31, 2002.[3]  This 2002 lease also provides for a rent payment of $500 due on the first of the year and has a default provision for the failure to pay rent. 
On  January 27, 2003, the president of Horry Club, Scott Bellamy, gave notice of default for Myrtle Beach Clubs failure to pay rent.  In June 2003, after commencement of this action, Myrtle Beach Club attempted payment of past due rent which Bellamy declined to accept.  
Myrtle Beach Club and Omar Temple subsequently moved for summary judgment on the issue of the 1993 lease validity.  Horry Club moved in response for summary judgment.  Horry Clubs motion was granted.  
ISSUES

1.     Is Horry Club subordinate to Omar Temple?
2.     Is the 1993 lease valid?

DISCUSSION
1.  Subordination
The trial judge ruled Horry Club is not subordinate to Omar Temple because there was no evidence Horry Club intended to subject itself  to Omar Temples control.  Myrtle Beach Club and Omar Temple contend Horry Club is subject to Omar Temples control based on Horry Clubs use of the Shrine name and symbols.  We disagree.[4]
The charter of a governing charitable fraternal organization, subscribed to by an affiliate and its members, is binding on the affiliate.  36 Am.Jur. 2d Fraternal Orders § 10; see also Grand Lodge v. Osceola Lodge, 178 N.W.2d 362 (Iowa 1970) (same).  Conversely, where there is no such subscription by a sub-group, there is no control vested in the parent organization.  We find the fact that Horry Club used the Shrine name and symbols is not sufficient evidence of its intent to subordinate itself to Omar Temple absent an express provision in Horry Clubs by-laws to that effect.  
2.  Lease agreement
Appellants contend the trial judge erred in finding the 2002 lease effectively modified the forty-year lease that was signed in 1993.  Appellants base this claim on the fact that, at the time the 2002 lease was signed, there was a temporary restraining order in effect that ordered that Horry Club shall not dispose of any [of its] assets.  This temporary restraining order was issued during the pendency of another action seeking to prevent Horry Club from converting from a non-profit to a mutual benefit corporation. 
In the context of the action in which the temporary restraining order was issued, conveying a one-year leasehold is not a prohibited disposition of an asset since it is not a permanent conveyance.  Moreover, even if the conveyance of a leasehold was prohibited and the 2002 lease was therefore invalid, this would not revive the 1993 lease which was improperly signed without approval of the national Shriners organization, a fact that is not disputed.[5]  Further, Horry Club invoked its right to declare a default for the failure to pay rent in 2003.  Accordingly, the trial judge properly ruled there is no valid lease.  See Rule 220(c), SCACR (appellate court may affirm for any reason appearing in the record). 
 AFFIRMED.            
TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

[1]Earlier bylaws required only that a candidate for membership be a member of some Shrine Temple.  
[2]The bylaws for the national Shriners organization in fact provide that an obligation for more than one year must be approved by the Imperial Council of that organization.  
[3] This 2002 lease was signed on behalf of Myrtle Beach Club by its then-president Fred Pirl on March 29, 2002.  Pirl was subsequently removed from office by Omar Temple effective April 22, 2002. 
[4]Generally, the courts will not intervene in the internal affairs of a private association absent an unlawful action or the infringement of property rights.  Hampton v. Supreme Lodge, 161 S.C. 540, 159 S.E. 923 (1931); accord Budwin v. American Psych. Assn, 29 Cal. Rptr. 2d 453 (Cal. App. 1994); Bloom v. Natl Collegiate Athletic Assn, 93 P.3d 621 (Col. App. 2004); Natl Assn for the Advancement of Colored People, 679 A.2d 554 (Md. App. 1996); Valkenburg v. Liberty Lodge, 619 N.W.2d 604 (Neb. App. 2000); Original Lawrence County Farm Org. v. Tennessee Farm Bureau Fedn, (Tenn. App. 1995); Juarez v. Texas Assn of Sporting Officials, 172 S.W.3d 274 (Texas App. 2005); Anderson v. Enterprise Lodge, 906 P.2d 962 (Wash. App. 1995).   Here, the ongoing dispute over the parties lease arrangement involves property rights and prompts us to intervene. 
[5]Appellants complain the trial judge should not have considered the affidavits submitted by Horry Club, which were critical to the determination that the forty-year 1993 lease was invalid, because they were untimely served.  The record indicates the trial judge allowed appellants counsel to attach responding affidavits when proposed orders were submitted.  Accordingly, the trial judge did not abuse his discretion in considering Horry Clubs affidavits.  See Black v. Lexington School Dist. No. 2, 327 S.C. 55, 488 S.E.2d 327 (1997) (discretion whether to consider untimely affidavits).