**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Casey Putnam and Arch Harrell, Appellants,

v.

Jamie Marie McAdams, individually, as (successor) Personal Representative of the Estate of Robin C. Winter, and as Personal Representative of the Estate of Scott F. McAdams; Dustin Winter TeBrugge; Greta Marie McAdams; and Tracy Christine McAdams, Respondents.

Appellate Case No. 2024-001368

———————

Appeal From Anderson County
R. Lawton McIntosh, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-175
Submitted February 20, 2026 – Filed April 15, 2026

———————

**AFFIRMED**

———————

Daniel L. Draisen, of The Injury Law Firm, PC, of Anderson, for Appellants.

Scott Franklin Talley, of Talley Law Firm, P.A., of Spartanburg, for Respondents.

———————

**PER CURIAM:**  Appellants Casey Putnam and Arch Harrell (collectively, Appellants) appeal the circuit court's order finding in favor of Respondents' breach of contract action and ordering Appellants to vacate the property in which they were residing.  Appellants argue the circuit court erred by (1) finding a lack of a meeting of the minds as to Appellants' right to exercise a purchase option contained within a lease agreement; and (2) finding, if there was a meeting of the minds, Appellants could not exercise the purchase option due to being in default under the lease agreement.  We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 5, 2020, Appellants and Scott F. McAdams (Scott) entered into a standard residential lease agreement (the Lease Agreement) for a property located in Williamston, South Carolina (the Property).[1]

In relevant part, the Lease Agreement provides as follows:

> LEASE TERM.  This [Lease Agreement] shall begin on the 1[st] day of August, 2020 and end on the 1st day of August, 2022 . . . .
>
> PROPERTY.  [Scott] agrees to lease the [Property] to [Appellants] . . . .
>
> . . .
>
> RENT.  The rent to be paid by [Appellants] to [Scott] throughout the term of this [Lease Agreement] is to be made in monthly installments of $800 [] and shall be due on the 5th day of each month . . . .
>
> . . .

---

[1]  Scott signed the lease individually and as the duly appointed personal representative of the Estate of Robin C. Winter.  The Property is, at all relevant times, titled in the name of Robin C. Winter.

DEFAULT. . . . If [Appellants] fail[] to pay rent when due . . . [Scott] may . . . immediately terminate this [Lease Agreement]. [Appellants] will be in default if . . . [they] do[] not pay rent.

Importantly, the Lease Agreement also contains a purchase option (the Purchase Option Provision or the Provision): "ADDITIONAL PROVISIONS. [O]ption to purchase, $50,000 negotiable."

Around July 2021, Scott passed away. Following the advice of legal counsel, Appellants ceased making rent payments under the Lease Agreement until a personal representative was appointed. Respondent Jamie Marie McAdams (Respondent McAdams) was appointed as personal representative for Scott's estate in October 2021.[2] Following Respondent McAdams's appointment, Appellants paid Respondent McAdams $3,900, which accounted for rent during the July 2021 through December 2021 period minus out-of-pocket repair expenses made by the Appellants and agreed to by Respondent McAdams. Since Respondent McAdams's appointment, Appellants have made multiple attempts to exercise the Purchase Option Provision.

In March 2022, Appellants received written notification that the Property had gone into foreclosure for nonpayment of the mortgage. Appellants informed Respondent McAdams that (1) they would not make any additional payments until the Property was out of foreclosure[3] and (2) they still wanted to purchase the Property under the Purchase Option Provision. Due to the foreclosure, Respondent McAdams informed Appellants that she was not sure if she could move forward with selling the Property at that time.

In an effort to protect any rights they had under the Purchase Option Provision, Appellants took the following actions: (1) on June 6, 2022, Appellants filed a Statement of Creditor's Claim in probate court against Scott's estate, seeking specific

---

[2] Respondent McAdams was also appointed as the successor personal representative for Robin C. Winter's estate in November 2021.

[3] Instead, Appellants began putting the rent payments into their attorney's trust account, which Appellant Putnam testified was meant to show "good faith that [she] was intending to purchase the [P]roperty."

performance of the Lease Agreement;[4] (2) around August 8, 2022, Appellants filed a Summons and Petition for Allowance of Creditor Claim in probate court; (3) on October 3, 2022, Appellants filed a Motion to Intervene in the foreclosure action on the Property; and (4) on November 15, 2022, Appellants commenced a civil action in circuit court against Respondents, alleging breach of contract and seeking specific performance of the Purchase Option Provision.

On August 1, 2022, the lease term under the Lease Agreement ended, and Appellants remained on the Property.

Between October and November of 2022, Respondent McAdams paid the remaining mortgage on the Property, resolving the pending foreclosure. Respondent McAdams subsequently notified Appellants that she resolved the foreclosure action and asked for the unpaid rent due since Appellants stopped making payments under the Lease Agreement. Between November and December, Respondent McAdams answered Appellants' summons and complaint in the civil action seeking specific performance of the Provision, raising a breach of contract counterclaim against Appellants for failure to pay rent and for remaining on the Property after the lease term ended.

Appellants' creditor's claim was removed from probate court to circuit court pursuant to sections 62-1-302(d)(5) and (f) of the South Carolina Code (2022 & Supp. 2025),[5] and Appellants' creditor's claim and civil action against Respondent McAdams were consolidated. A bench trial was held on July 23, 2024.

---

[4] That same day, Appellants sent written notice to Respondent McAdams reiterating their desire to purchase the Property under the Purchase Option Provision.

[5] In relevant part, section 62-1-302(d)(5) provides that if actions filed in probate court are "actions in which a party has a right to trial by jury and which involve an amount in controversy of at least five thousand dollars in value," those actions "on motion of a party, or by the court on its own motion . . . must be removed to the circuit court." S.C. Code Ann. § 62-1-302(d)(5) (2022 & Supp. 2025). If actions are removed pursuant to subsection (d)(5), subsection (f) gives the probate court discretion to "remove any other related matter or matters which are before the probate court to the circuit court if the probate court finds that the removal of such related matter or matters would be in the best interest of the estate or in the interest of judicial economy." S.C. Code Ann. § 62-1-302(f) (2022 & Supp. 2025).

At the trial, in support of defining the Purchase Option Provision, Appellant Putnam testified that (1) she did not draft the Lease Agreement but it was provided to her for Appellants' signatures; (2) it was her understanding that, under the Provision, she had the ability to immediately purchase the Property "if [she] could pay [$]50,000 right then"; and (3) she planned to purchase the Property by getting financing through a bank but did not apply for financing. Respondent McAdams did not dispute Appellant Putnam's testimony but testified that she was not involved in and did not have any evidence to explain the negotiations and discussions Appellants and Scott had regarding the Lease Agreement and the Provision.

The circuit court issued a Form 4 order in favor of Respondent McAdams, finding that (1) there was no meeting of the minds as to Appellants' right to purchase the Property under the Purchase Option Provision; and (2) if there was a meeting of the minds, Appellants could not enforce the Provision because they were in default for failing to pay rent prior to and after the lease term ended.

Appellants timely filed a motion to reconsider, which was denied. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err by finding there was no meeting of the minds as to Appellants' right to purchase the Property under the Lease Agreement?

II. Did the circuit court err by finding that Appellants were in default under the Lease Agreement for failure to pay rent?

## STANDARD OF REVIEW

An "action for specific performance of [an] option contract is in equity." *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 290 (2000). "In equity actions[,] an appellate court can review the record and make findings based on its view of the preponderance of the evidence." *Id.* at 105, 531 S.E.2d at 290–91. "However, this [c]ourt is not required to disregard the findings of the trial [court which] saw and heard the witnesses and was in a better position to judge their credibility." *Id.* at 105, 531 S.E.2d at 291. Additionally, "[a]n action for breach of contract is an action at law." *Electro-Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter*, 357 S.C. 363, 367, 593 S.E.2d 170, 172 (Ct. App. 2004). "In an action at

law, on appeal of a case tried without a jury, the appellate court's standard of review extends only to the correction of errors of law." *Id.*

## LAW AND ANALYSIS

### I. Meeting of the Minds Finding

Appellants argue that the circuit court erred by finding there was no meeting of the minds because (1) the circuit court failed to give meaning to the Purchase Option Provision's "$50,000" price term and (2) the circuit court failed to construe the Provision liberally in favor of Appellants as the non-drafting party. We disagree.

Our courts have analyzed option provisions within lease agreements as stand-alone option contracts for purposes of determining if the provisions were valid and enforceable. *See generally Ingram*, 340 S.C. at 108, 531 S.E.2d at 292 (analyzing a provision within a lease agreement, which gave a tenant the right to purchase leased property during the lease term, as an option contract to determine whether the tenant properly exercised the option); *Conner v. Alvarez*, 285 S.C. 97, 98-100, 328 S.E.2d 334, 335-36 (1985) (analyzing whether a tenant of a house validly exercised an option in a "lease-option" agreement); *Cotter v. James L. Tapp Co.*, 267 S.C. 647, 650-55, 230 S.E.2d 715, 716-19 (1976) (analyzing whether a tenant complied with the terms of an option provision to extend an existing lease). As such, our analysis recognizes the Purchase Option Provision as a stand-alone option contract within the Lease Agreement and focuses on whether there was a meeting of the minds as to the Provision.

"South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989). The "meeting of the minds" requirement "is not based on [any] secret purpose or intention [of one party] . . . but must be based on purpose and intention which has been made known or which, from all the circumstances, should be known." *Id.* at 105, 382 S.E.2d at 894.

"An option contract is interpreted according to its actual terms and the context in which the contract was made." *Ingram*, 340 S.C. at 110, 531 S.E.2d at 293. "In general, if the contract is unambiguous, clear, and explicit, it must be construed

according to the terms the parties have used, and the terms are to be taken and understood in their plain, ordinary, and popular sense." *Id.*

However, if the agreement's language is ambiguous, "evidence may be admitted to show the intent of the parties." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 500, 649 S.E.2d 494, 503 (Ct. App. 2007). Unique to option contracts, "[i]t is well settled in South Carolina that option contracts are strictly construed in favor of the optionor and against the optionee." *Ingram*, 340 S.C. at 108, 531 S.E.2d at 292.

In *Ingram*, our supreme court noted the following:

> Option contracts generally have three main characteristics: (1) they are unilateral contracts where the optionor, for a valuable consideration, grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; (2) they are continuing offers to sell, irrevocable during the option period; and (3) the *transition of an option into a contract of purchase and sale can only be effected by an unqualified and unconditional acceptance of the offer in accordance with the terms and within the time specified in the option contract.*

340 S.C. at 108, 531 S.E.2d at 292 (emphasis added).

Here, we hold that the language of the Purchase Option Provision, on its face, shows that there was no meeting of the minds.

Generally, where an option contract does not expressly require payment of the purchase price "as a condition precedent to the exercise of an option, 'courts have . . . been inclined to construe such agreements as calling simply for a promise . . . to pay . . . rather than for actual payment . . . .'" *Id.* at 109, 531 S.E.2d at 292–93 (quoting J. R. Kemper, *Necessity for Payment or Tender of Purchase Money Within Option Period in Order to Exercise Option, in Absence of Specific Time Requirement for Payment*, 71 A.L.R.3d 1201, § 7 (1976)). However, "[t]o determine whether actual payment is required to exercise an option," the supreme court requires courts "look at both the specific language used in the option contract and also the context in which it was made." *Id.* at 109, 531 S.E.2d at 293.

The Purchase Option Provision simply states, "[O]ption to purchase, $50,000 negotiable." The Provision's purchase price term is uncertain, and there are no clear requirements for acceptance of the option. *See id.* at 108, 531 S.E.2d at 292 (noting option contracts generally require "the transition of an option into a contract of purchase and sale . . . be effected by an unqualified and unconditional acceptance of the offer in accordance with the terms and within the time specified in the option contract"). The Provision evinces no intent that Scott was obligated to sell the Property to Appellants if they were ready, willing, and able to pay $50,000. To the contrary, "$50,000 negotiable" shows there is some anticipation that the parties could negotiate the purchase price.

Thus, we hold that the circuit court did not err by finding a lack of a meeting of the minds as to the Purchase Option Provision.

## II. Default Finding

Appellants also argue that the circuit court erred by finding that, if there was a meeting of the minds, Appellants could not exercise the option due to being in default under the Lease Agreement. Appellants assert they could still exercise the option because they were relieved of the obligation to pay rent under the Lease Agreement when Respondent McAdams: (1) made an anticipatory breach by allowing the Property to go into foreclosure; and (2) after resolving the pending foreclosure, repudiated the Lease Agreement by refusing to allow Appellants to exercise the option. We disagree.

In *Hampton v. Supreme Lodge, K.P., Courts of Calanthe, Pride of Columbia No. 55*, 161 S.C. 540, 159 S.E. 923 (1931), our supreme court held:

> Where a contract embodies mutual and interdependent conditions and obligations, and one party either disables himself from performing, or prevents the other from performing, or repudiates in advance his obligations under the contract, and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is not only excused from further performance on his part, but may at his option treat the contract as terminated for all purposes of performance, and maintain

an action at once for damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance by the defendant.

161 S.C. at 540, 159 S.E. at 924 (quoting *Hubbard v. Woodmen of the World*, 125 S.C. 154, 156, 118 S.E. 418, 419 (1923)).

Generally, "an anticipatory breach of contract is one committed before the time has come when there is a present duty of performance[] and is *the outcome of words or acts evincing an intention to refuse performance in the future*." 30 S.C. Jur. *Contracts* § 66 (2026) (emphasis added).

Though Appellants argue that Respondent McAdams made an anticipatory breach by allowing the Property to go into foreclosure, Appellants did not provide any evidence as to Respondent McAdams's intent to refuse to pay the mortgage and have the Property go into foreclosure. The only evidence as to Respondent McAdams's intent is Respondent McAdams's uncontested testimony that she was not aware of a deficiency on the mortgage but, after informing Appellants of the deficiency, Respondent McAdams paid the foreclosure between October and November of 2022.[6] Thus, Respondent McAdams did not make an anticipatory breach of the Lease Agreement when the Property went into foreclosure.

Appellants, however, after receiving the foreclosure notice, informed Respondent McAdams that they would not make any additional rent payments until the foreclosure action was resolved and did not make such payments. Appellants' decision not to pay rent put them in default under the Lease Agreement, and they were not relieved of their obligation to pay rent. *See Moon v. Jordan*, 301 S.C. 161, 164, 390 S.E.2d 488, 490 (Ct. App. 1990) ("[T]he fact that one is unable to perform a contract because of his inability to obtain money, whether due to his poverty, a financial panic, or failure of a third party on whom he relies for furnishing the money, will not ordinarily excuse nonperformance in the absence of a contract provision in that regard."). By Appellants defaulting under the Lease Agreement,

---

[6] Additionally, if the Property was foreclosed, the Lease Agreement only requires Respondent McAdams to notify Appellants of the Property's new owner. Thus, Appellants' duty to pay rent under the Lease Agreement survived notwithstanding the foreclosure proceeding.

Respondent McAdams was excused from performance under the Purchase Option Provision.

Thus, we hold the circuit court did not err by holding that, if there was a meeting of the minds, Appellants could not exercise the option because they were in default under the Lease Agreement.

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**[7]

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**

---

[7] We decide this case without oral argument pursuant to Rule 215, SCACR.